Ernest Henderson *vs.* Commissioners of Barnstable County & others[1] (and a companion case[2]).

Nos. 98-P-1512 & 98-P-1513.

Suffolk. January 14, 2000. - June 20, 2000.

Present: Laurence, Dreben, & Gelinas, JJ.

*Declaratory Relief. Administrative Law,* Regulations. *Commissioner of Correction. Imprisonment,* Good conduct deductions, Enforcement of discipline. *Constitutional Law,* Imprisonment. *Due Process of Law,* Prison regulation, Prison disciplinary proceedings.

Challenges to county officials' interpretation of G. L. c. 127, § 129, as then in effect, which worked a forfeiture of "good time" credits of county prisoners, were appropriately brought under the Declaratory Judgment Act, G. L. c. 231A, § 2. [458-459]

Actions of the superintendent of a house of correction and the county commissioners, imposing discipline on certain county prisoners without notice and hearing, were not in accord with regulations promulgated by the Commissioner of Correction, 103 Code Mass. Regs. §§ 943.00 et seq. (1992), and were unlawful. [459-462]

Where county prisoners had received notice and an opportunity to be heard at disciplinary hearings and were properly adjudicated guilty of violating a major disciplinary rule and sentenced to a period of solitary confinement, the prisoners were not entitled to a further hearing before imposition of additional punishment of revocation of good time credits, and no Federal Constitutional rights were thereby violated. [462-468]

Civil actions commenced in the Superior Court Department on December 29, 1993, and October 11, 1994, respectively.

The cases were heard by *John C. Cratsley,* J., on motions for summary judgment.

[1]The superintendent of the Barnstable County jail and house of correction, the sheriff of Barnstable County, as well as all those persons as individuals.

[2]The companion case was brought by Evelyn Murphy as administratrix of the estate of William Murphy against the commissioners of Barnstable County and the other defendants named in note 1, *supra.* The appeals have been consolidated for decision.

*Robert S. Troy* (*Lisa M. Sheehan* with him) for the defendants.
*Barry Barkow* for Ernest Henderson & another.

DREBEN, J. After their loss of good time credits, accrued under G. L. c. 127, § 129, Ernest Henderson and plaintiff Evelyn Murphy's decedent, William Murphy,[3] each of whom had been incarcerated in the Barnstable County jail and house of correction, brought separate actions challenging the procedure by which the defendant county officials had revoked these credits. They sought declaratory relief and damages under 42 U.S.C. § 1983. A judge of the Superior Court, on cross motions for summary judgment, entered a partial final judgment for each plaintiff under Mass.R.Civ.P. 54(b), 365 Mass. 821 (1974), declaring that the county defendants' actions in forfeiting the plaintiffs' good conduct deductions were unlawful and unconstitutional, allowing plaintiffs' motions for summary judgment as to the liability of the county defendants under 42 U.S.C. § 1983, and denying the latters' claims of qualified immunity. We affirm the ruling that the county defendants' actions were contrary to State law, but reverse the ruling that the plaintiffs' rights under the Due Process Clause of the United States Constitution were violated.

Before us are appeals by the county defendants. Although the Commissioner of Correction (commissioner) was originally a defendant in each action, he is not a party to this appeal as he settled with Henderson,[4] and the judge dismissed the claims against him in the Murphy action. As many of the issues are common to both appeals, our discussion will apply to both the Henderson and Murphy cases unless otherwise indicated.[5]

The facts are undisputed. Murphy and Henderson, while incarcerated in the Barnstable County jail and house of correction, were tested for the presence of illegal drugs. Their respective urine samples "tested positive," and both plaintiffs were charged with violating the Inmate Handbook of the Barnstable

---

[3]For convenience we refer to William Murphy as Murphy and as plaintiff.

[4]The commissioner agreed, inter alia, "to enforce compliance, in accordance with Massachusetts General Laws c. 127, § 1B, of a disciplinary procedure at Barnstable County House of Correction whereby statutory good conduct deductions may be forfeited only pursuant to a written recommendation from a disciplinary board or hearing officer that a specified number of days may be forfeited as a sanction for misconduct."

[5]Although there are some factual differences which may apply to some of the defendants, for purposes of this opinion, we find it unnecessary to analyze their defenses separately.

County Jail & House of Correction promulgated by the Barn-
stable County sheriff's department which included as an enumer-
ated disciplinary offense "possession . . . of any unauthorized
controlled substance, [or] alcoholic beverage." Both Murphy
and Henderson waived their rights to a three-member disciplin-
ary board. Henderson appeared before a hearing officer, but ap-
parently offered no defense or any evidence in mitigation.[6] The
complaint in Murphy's case and the attachments suggest that
Murphy may have waived his right to a hearing. His disciplin-
ary report states that he admitted that he became intoxicated
while on furlough.

After their disciplinary hearings, each was found guilty and
sentenced to a period of solitary confinement.[7] No other sanc-
tion was imposed by the disciplinary officer and neither Hender-
son nor Murphy took an administrative appeal. Shortly after
their respective disciplinary hearings, upon the recommendation
of the superintendent of the Barnstable County jail and house of
correction,[8] and without prior notice to the plaintiffs, the Barn-
stable County commissioners met and voted to revoke substan-
tial portions of the plaintiffs' statutory good time (127 days in
the case of Henderson and sixty days in the case of Murphy),
and to restore those days to their sentences.[9] Although each
plaintiff was released somewhat earlier than the forfeiture of
deductions would indicate, both remained incarcerated for a

---

[6]He admits this in a deposition contained in the record. The disciplinary
hearing record does not indicate otherwise, and Henderson makes no claim
that he contested the evidence of the urinalysis.

[7]Six days in the case of Henderson and nine days in the case of Murphy.

[8]The request of the superintendent as well as the vote of the county com-
missioners are attached to Murphy's complaint. The superintendent's request
with respect to Henderson is not in the record.

The superintendent's request in the Murphy case reads as follows:

> "This communication is report [sic] and a request for the revocation
> of the Statutory good time accumulated of Inmate Murphy. This
> individual went out on a furlough, upon his return he submitted a urine
> sample that revealed that he used a controlled substance in violation of
> the Mass. Statutes and his furlough agreement which is attached and
> stipulates that he is subject to this action. He has accumulated 60
> days[.] I am requesting your approval in the revocation of this good
> time."

We assume a similar request was made by the superintendent for Hender-
son.

[9]The vote of the county commissioners in Murphy's case is as follows:

longer period than they would otherwise have been if their statutory good time credits had not been revoked.

1. *Declaratory relief.* Before discussing the statutory and constitutional violations found by the motion judge and challenged by the defendants, we consider and reject the defendants' claim that the plaintiffs' actions for declaratory relief should have been dismissed on the ground that their only recourse was an action in the nature of certiorari. Unlike the counts that were dismissed in the case of *Pidge* v. *Superintendent, Mass. Correctional Inst., Cedar Junction,* 32 Mass. App. Ct. 14, 17-18 (1992), the complaints here challenge the defendants' interpretation of G. L. c. 127, § 129, their practice of acting under that interpretation,[10] and their construction of the regulations and handbook. Such claims are appropriately brought under the Declaratory Judgment Act, G. L. c. 231A, § 2.[11] *Nelson* v. *Commissioner of Correction,* 390 Mass. 379, 387-388 (1983).

---

"VOTED: In accordance with M.G.L. Chapter 127, Section 129, as amended by Chapter 770 of the Acts of 1955, and upon the recommendation of Supt. James M. Fredericks of the Jail and House of Correction, it is ordered that William Murphy lose 60 days accumulated statutory good time from his sentence for violation of the rules of the House of Correction."

A similar vote (with a different figure) was taken in Henderson's case.

[10]There is no claim by the county commissioners or the superintendent that their actions were not in accord with prevailing practice. See *Nelson* v. *Commissioner of Correction,* 390 Mass. 379, 387 n.11 (1983). Indeed, they argue that they were authorized under G. L. c. 127, § 129, to revoke the statutory good time of any inmate, independently of any sanction imposed by the disciplinary officers, thus permitting the assumption that their actions in these cases have "been consistently repeated in similar cases." *Kenney* v. *Commissioner of Correction,* 393 Mass. 28, 31 n.6 (1984).

[11]General Laws c. 231A, § 2, as amended by St. 1974, c. 630, § 1, provides, in pertinent part, that declaratory relief may be obtained

"to secure determinations of right, duty, status or other legal relations under . . . a . . . statute . . . or administrative regulation, including determination of any question of construction or validity thereof which may be involved in such determination. Said procedure under section one may be used in the superior court to enjoin and to obtain a determination of the legality of the administrative practices and procedures of any municipal, county or state agency or official which practices or procedures are alleged to be in violation of the Constitution of the United States or of the constitution or laws of the commonwealth, or are in violation of rules or regulations promulgated under the authority of such laws, which violation has been consistently repeated . . . . "

As to Henderson, the defendants also assert that, since he was incarcerated at the time he brought the action (Murphy had been released at the time of his complaint), Henderson's only remedy was a writ of habeas corpus.[12] The judge properly treated each action as one seeking declaratory relief. See *Pina* v. *Superintendent, Mass. Correctional Inst., Walpole,* 376 Mass. 659, 665-666 (1978); *Nelson* v. *Commissioner of Correction,* 390 Mass. at 387.

2. *Statutory and regulatory violations.* The defendants listed five issues in the statements of issues in their original briefs, none of which related to the motion judge's ruling that the statutory and regulatory scheme had been violated when the county commissioners revoked the plaintiffs' statutory good time credits. Only after the plaintiffs, in their briefs, argued the correctness of the ruling did the defendants claim that the judge was in error. That the plaintiffs argued the point does not broaden the issues presented to the court by the defendants. Issues raised for the first time in a reply brief are not properly before us. See *Knipe* v. *Skinner,* 999 F.2d 708, 710-711 (2d Cir. 1993); *United States* v. *Shortman,* 91 F.3d 80, 82 n.1 (9th Cir. 1996); *Hall* v. *Coram Healthcare Corp.,* 157 F.3d 1286, 1290 (11th Cir. 1998), cert. denied, 119 S. Ct. 1760 (1999). See also *Commissioner of Rev.* v. *Plymouth Home Natl. Bank,* 394 Mass. 66, 67 n.3 (1985).

· Nevertheless, because of the importance of the issue to prison officials and our reluctance to restrict public officials in the performance of their duties if not required by statute or regulation — see also the settlement agreement with the commissioner, note 4, *supra* — as a discretionary matter, see *Commissioner of Rev.* v. *Plymouth Home Natl. Bank, supra,* we consider the issue and conclude that the judge did not err in ruling that the revocation of the plaintiffs' good time credits was improper under 103 Code Mass. Regs. §§ 943.00 et seq. (1992).

Our discussion requires an analysis of the relevant statutes and regulations. General Laws c. 127, § 129, repealed by St. 1993, c. 432, § 10, but still in effect as to the plaintiffs and oth-

---

[12]The defendants' claim that Henderson should have sought relief by way of habeas corpus is disingenuous. Henderson was released the day he brought the complaint, his release "concededly," the judge noted, "an attempt to moot the issues raised by his lawsuit."

ers whose offenses were committed prior to July 1, 1994,[13] provides for automatic sentence reductions for prisoners who have "faithfully observed all the rules" of the place of confinement. However:

> "If a prisoner violates any rule of his place of confinement, the . . . county commissioners . . . upon the recommendation and evidence submitted to them . . . , in writing by the principal officer, or officer in charge, shall decide what part, if any, of such good conduct deduction from sentence or sentences shall be forfeited by such violation. . . ."

Section 129 cannot be read in isolation. Section 1A of the same chapter, c. 127, as inserted by St. 1972, c. 777, § 11, provides that, after consulting with and receiving the recommendations of the sheriffs of the several counties, the commissioner "shall establish, and shall from time to time revise, minimum standards for the care and custody of all persons committed to county correctional facilities."[14] Section (*q*) of c. 124, § 1, as appearing in St. 1972, c. 777, § 5, authorizes the commissioner to "make and promulgate necessary rules and regulations incident to the exercise of his powers . . . including . . . regulations regarding . . . discipline . . . for all persons committed to correctional facilities."

Pursuant to the foregoing statutory authority, the commissioner issued regulations, 103 Code Mass. Regs. §§ 943.00-943.09 (1992), entitled "county correctional facilities — inmate rules and discipline." These regulations in relevant part provide that "[t]he facility shall develop and implement a written plan for inmate discipline" which shall include, inter alia, "rules of inmate conduct and penalties for violation," "disciplinary procedures and hearing," "*sanctions*," and "appeal process" (emphasis supplied). 103 Code Mass. Regs. § 943.01(1). The written discipline plan is to provide for major rule infractions and shall contain, inter alia, specified notice and hearing require-

---

[13]See St. 1993, c. 432, § 21. See also *McGuinness* v. *Dubois*, 75 F.3d 794, 797 n.3 (1st Cir. 1996).

[14]Section (*d*) of c. 124, § 1, provides that the commissioner shall establish standards for all county correctional facilities and shall secure compliance with such standards through the enforcement provisions of c. 127, § 1B, if necessary. Section 1B gives the commissioner authority, if, after notice, the facility does not comply with minimum standards, to petition the Superior Court to close the facility or for other relief.

ments, "policy and procedure specifying that the hearing officer's decision be based solely upon information obtained in the hearing process," and *policy and procedure that specifies that a written record is made of the disciplinary hearing decision, the disposition and sanctions,* and the reason for the action(s) imposed. A copy of the hearing decision shall be given to the inmate within 48 hours of the hearing." (Emphasis supplied.) 103 Code Mass. Regs. § 943.06(5), (6).

The regulations also contain a specific section on sanctions, § 943.08(2), which, after providing that the facility "shall ensure that sanctions imposed for rule violations are reasonably related to the severity of the offense," states that "[a]cceptable forms of discipline shall include, but not be limited to, the following: (a) loss of privileges for a specified period of time; (b) reprimand; (c) removal from work detail; (d) extra work duty for a specified period of time; *(e) recommended forfeiture of good time credit earned in accordance with M.G.L. c. 127, § 129;* (f) disciplinary detention for a specified period of time" (emphasis supplied).

The term "recommended" is used in recognition that, under c. 127, § 129, only the county commissioners may, on recommendation of "the principal officer, or officer in charge," decide what portion of good time credits is to be lost. It is implicit in these provisions, which require that the inmate be informed of the decision, including the sanction, within forty-eight hours of the hearing, that the recommendation of loss of good time is not a decision to be made independently of the disciplinary hearing, or to be initiated sua sponte by the superintendent subsequent to the decision of the hearing officer. The recommendation that good time credits be forfeited, one of the most severe of all sanctions, is to be included, if at all, in the decision of the hearing officer and the inmate is to be informed of that decision within the forty-eight hour period.

While we do not rely on the inmate handbook,[15] it is significant that its authors, Barnstable County officials, confirm

---

[15]As we do not rely on the handbook, we need not reach the question whether the handbook (written plan) which is called for by the commissioner's regulations is binding on the county correctional officials. See *Dougan* v. *Commissioner of Correction,* 34 Mass. App. Ct. 147, 149 (1993), where a manual containing a movement chronology was held not to be binding on the Department of Correction. Compare *Commissioner of Rev.* v. *Bay-Bank Middlesex,* 421 Mass. 736, 739-740 (1996).

this interpretation of the regulations, namely, that any sanctions ordered are to be imposed at the time of the disciplinary decision. The handbook states that the sanction of recommended good time forfeiture is a major sanction, that the inmate is to be advised in writing of the decision within two working days of the hearing, and that the notice is to include a statement of the reason for the sanctions imposed. The handbook also points out that "[f]orfeiture of statutory good time credits must be reviewed and approved by the facility administrator and the County Commissioners." An additional provision states that, within two days of receipt of an inmate's administrative appeal, the sheriff or deputy "may order further or new proceedings, may reduce or suspend the decision made by the Board, but may not, in any event, increase the sanction given by the Board."[16]

In sum, c. 127 and c. 124, §§ 1(*d*) and (*q*), confer on the commissioner oversight over county correctional facilities and authorize the commissioner to issue regulations regarding discipline at those institutions. See *Gordon* v. *Sheriff of Suffolk County*, 411 Mass. 238, 242 (1991). Such regulations have the force of law. *'Abdullah* v. *Secretary of Pub. Safety*, 42 Mass. App. Ct. 387, 391-392 (1997), and cases cited. Contrary to the defendants' contention, there is nothing in the regulations cited which conflicts with G. L. c. 127, § 129. Accordingly, we conclude that the actions of the superintendent and the county commissioners were unlawful as not in accord with the regulations promulgated by the commissioner.

3. *Constitutional violations.* Although we have concluded that the imposition of additional penalties by the county commissioners on recommendation of the superintendent without the recommendation of the disciplinary board was contrary to the requirements of 103 Code Mass. Regs. §§ 943.00 et seq. (1992), it does not follow that such failure by the county officials is in violation of the United States Constitution or Federal law. See *McGuinness* v. *DuBois*, 75 F.3d 794, 798-799 (1st Cir. 1996).

In his memoranda allowing the plaintiffs' partial summary judgments, the judge ruled that the due process requirements of *Wolff* v. *McDonnell*, 418 U.S. 539, 564 (1974) were not met, saying:

---

[16]This provision tracks a similar regulation applicable to State correctional institutions. 103 Code Mass. Regs. § 430.18(2) (1992) ("[i]n no event shall a Superintendent or his designee increase any sanction on an appeal from a decision of the hearing officer").

"Both plaintiffs' good time credits were revoked *sua sponte* by the County Commissioners without any notice. Far from being given any warning or opportunity to present a defense of any kind, the plaintiffs were instead peremptorily informed, after the decision had been made, that their good time credits had been taken away. No written statement of the reasons for the decision, or of the evidence relied upon, was ever provided. These actions violated the plaintiffs' rights to procedural due process."

The county commissioners deny that there was a constitutional violation and claim that, even if there were, the motion judge erred in not upholding their claim of qualified immunity. They point out that they are generally shielded from liability in their individual capacities for civil damages under 42 U.S.C. § 1983, unless their conduct violates "clearly established" constitutional rights. *Harlow* v. *Fitzgerald*, 457 U.S. 800, 818 (1982). *Anderson* v. *Creighton*, 483 U.S. 635, 639 (1987).[17]

In considering the constitutional issues,[18] we follow the prescript of *Wilson* v. *Layne*, 526 U.S. 603, 609 (1999), requiring us to "first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all," before proceeding " 'to determine whether that right was clearly established at the time of the alleged violation.' *Conn.* v. *Gabbert*, [526 U.S. 286,] 290 [(1999)]." *Ibid.* The entitlement to

---

[17]The defendants also claim, relying on *Heck* v. *Humphrey*, 512 U.S. 477, 486-487 (1994), and *Edwards* v. *Balisok*, 520 U.S. 641, 648 (1997), that the plaintiffs' § 1983 actions are not cognizable. Those cases held that, in order to recover damages for an allegedly unconstitutional conviction or imprisonment caused by actions whose unlawfulness would render a plaintiff's conviction or sentence invalid, a plaintiff must prove that his or her conviction or sentence has already been invalidated. Although we note that the various opinions in *Spencer* v. *Kemna*, 523 U.S. 1 (1998), indicate that five members of the Supreme Court probably would not apply *Heck* to a case where a plaintiff is no longer in custody and therefore unable to attack his conviction via habeas corpus, we need not reach the *Heck* issue or whether the defendants raised the issue in a timely fashion because we conclude that the plaintiffs were not denied due process. See *Fox* v. *Van Oosterum*, 176 F.3d 342, 352 (6th Cir. 1999).

[18]Although on appeal the plaintiffs argue that art. 10 of the Massachusetts Declaration of Rights may extend to them greater protection than the Federal Constitution, it does not appear that they argued this issue to the motion judge, and he did not base his conclusion on State constitutional grounds. Since the plaintiffs did not cross-appeal, we confine our discussion to Federal law. See *Greenfield Country Estates Tenants Assn., Inc.* v. *Deep*, 423 Mass. 81, 85 n.12 (1996).

statutory good time credit is a liberty interest. While *Sandin* v. *Conner*, 515 U.S. 472 (1995), has limited the scope of State-created liberty interests, the court recognized that States "may under certain circumstances create liberty interests which are protected by the Due Process Clause," *id.* at 484, and referred particularly to the "good time credit scheme of *Wolff* [v. *Mc-Donnell*, 418 U.S. 539 (1974),]" as an interest of "real substance." *Id.* at 480. Thus, *Sandin* did not affect *Wolff*'s holding that an inmate is entitled to the procedural protections outlined in *Wolff* before good time credits may be revoked. *Mc-Guinness* v. *Dubois*, 75 F.3d at 797 n.3.

We turn to the *Wolff* protections. To satisfy the minimum requirements of procedural due process, an inmate facing loss of good time credits for serious misconduct must be provided with advance (no less than twenty-four hours) written notice of the claimed violation and "a 'written statement' by the factfinders as to the evidence relied on and reasons' for the disciplinary action."[19] *Wolff*, 418 U.S. at 564, quoting from *Morrissey* v. *Brewer*, 408 U.S. 471, 489 (1972). The purpose of the written notice is to inform the inmate of the charges and to enable him to marshal the facts and prepare a defense. *Id.* at 564. The reasons for written records of the proceedings are to "protect the inmate against collateral consequences based on a misunderstanding of the nature of the original proceeding" and to "help[] insure that administrators, faced with possible scrutiny by state officials and the public, and perhaps even the courts, where fundamental constitutional rights may have been abridged, will act fairly." *Id.* at 565.

Neither plaintiff here challenges the procedure at his disciplinary hearing. They do not claim they were precluded from marshaling the facts in their defense or those in mitigation of their actions at the time of the disciplinary hearing, a time when they knew a possible sanction was a recommended forfeiture of statutory good time credits.

The question is whether an inmate, having been adjudicated guilty of violating a major disciplinary rule according to the due process procedures set forth in *Wolff*, is entitled by the Federal Constitution to a second hearing before additional punishment

---

[19]The inmate also "should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." *Wolff*, 418 U.S. at 566.

based upon the guilty finding can be imposed. We have no doubt that an inmate's expectations and sense of fairness are severely impacted by such action, particularly where, as here, such action is contrary to State law. Nevertheless, the wisdom of the action is not the issue. We have been cited to no case and have found none holding that a second hearing is constitutionally required. To the contrary, what authority there is suggests that, if a proceeding meeting the due process requirements of *Wolff* establishes the fact of violation, additional punishment may be imposed without a second hearing.

In *Walker* v. *Mintzes*, 771 F.2d 920, 932-934 (6th Cir. 1985), prisoners who had received a hearing establishing that they had engaged in major misconduct complained that they received no hearing or notice before they were placed in administrative segregation, a punishment viewed at the time as involving a liberty interest.[20] The *Walker* court held that it did not need to determine the validity of Michigan's administrative structure which the prisoners claimed was not followed. *Id.* at 933-934. Since due process requirements were met by a proper hearing to determine whether an act of major misconduct occurred prior to the deprivation of the liberty interest, no second hearing was constitutionally required. *Ibid.* See *Sanders* v. *Borgert*, 711 F. Supp. 889, 893 (E.D. Mich.), aff'd, 891 F.2d 292 (6th Cir. 1989), cert. denied, 495 U.S. 936 (1990), following *Walker* v. *Mintzes*, *supra*, which similarly held no second hearing was necessary.

In *Bartholomew* v. *Reed*, 477 F. Supp. 223, 229 (D. Or. 1979), modified on other grounds sub nom. *Bartholomew* v. *Watson*, 665 F.2d 915 (9th Cir. 1982), prisoners challenged a prison rule permitting the superintendent to increase the sanction imposed by the disciplinary hearing board. They argued that, consistent with due process, a hearing must be held before the superintendent could increase the sanction, or the disciplinary hearing would be a sham. *Ibid.* Noting that the plaintiffs failed to distinguish between a determination that a violation has occurred and the imposition of a sanction for that violation, the court held:

"Once the fact of violation has been established in a proceeding which meets due process requirements in

---

[20]But see *Sandin* v. *Conner*, 515 U.S. 472, 486 (1995), which held that disciplinary segregation, in the circumstances of that case, did not involve a liberty interest.

conformance with *Wolff*, the superintendent, as head of the institution, may properly be given the authority to increase the sanction in the light of his experience and knowledge of prison operations. This is particularly true where he is the one with overall responsibility, and who therefore has the broadest, most comprehensive view of the needs of the prison."

*Ibid.* While the rule considered in *Bartholomew* which gave the superintendent such authority also required a written statement of the reasons for the increase and immediate notification to the inmate, these sound provisions of State law have no bearing on the question whether a second hearing is constitutionally required.

The plaintiff in *Picard* v. *State*, 339 N.W.2d 368, 369-370 (Iowa 1983), at a hearing before the prison disciplinary committee, was found guilty of violating prison rules as to escape and furlough and was sentenced to spend thirty days in administrative segregation. More then two months later, the director of prisons forfeited all of the plaintiff's earned good time — 1129 days — without an additional hearing or any additional notice. *Id.* at 370. The director acted pursuant to a provision of the Iowa Code which gave the warden, in cases of escape, the discretion, with the approval of the State director of prisons, to deprive the prisoner of any portion or all of his good time credits. *Ibid.* There were prison rules which seemed to preclude such action, but the Iowa Supreme Court reconciled the rules and the statute by finding that the rules were not intended to cover forfeitures of good time which only the warden and State director could impose. *Id.* at 371. After disposing of the plaintiff's State claims, the court found no constitutional due process violation.

"[B]ecause there were no factual issues left unresolved after the disciplinary hearing concerning his escape, due process did not mandate an additional hearing before the forfeiture of petitioner's good time based on the finding that he had in fact escaped."

*Id.* at 373.

The court also held that, because the plaintiff "was not entitled to an additional hearing, there was no reason to provide

him with additional notice of the 'alleged violation.' " *Ibid.* He was not entitled to a more detailed statement as to why all of his good time was forfeited. *Ibid.* He had received notice stating,

> "With a clear conduct record from this date, your term will expire 6-29-85. Loss of all good time by order of the director for your escape."

*Id.* at 372. The court found that, upon reading the statement, petitioner and any person reviewing the decision would know precisely what was decided and why. *Ibid.* He had lost all good time because of his escape. *Id.* at 372-373.

As we have indicated earlier, the purpose of the hearing and notice requirements of *Wolff* is to give the plaintiff an opportunity to contest the facts underlying the charges and to present any facts in mitigation of his punishment. If there is no factual dispute, "the Due Process Clause does not entitle an inmate to additional disciplinary hearing procedure." *Sandin* v. *Conner*, 515 U.S. 472, 503-504 (1995) (Breyer, J., dissenting). The plaintiffs here had notice and the opportunity to marshal their facts at a time when they knew that they could lose their good time credits. They make no claim that there is now any factual dispute which requires resolution.

As we have also discussed, one of the main purposes of the *Wolff* requirement of a written statement of the "reasons for the disciplinary action" taken (the plaintiffs did receive a statement of the evidence relied on — the urinalysis) is to protect the inmate against collateral consequences based on a misunderstanding of the record. See *Wolff*, 418 U.S. at 564-565. The superintendent's letter and the county commissioners' vote provide an adequate record of the reasons to protect the plaintiffs in later proceedings. (See notes 8 and 9, *supra.*) There is no doubt as to why the county commissioners imposed the sanction. See *Stokes* v. *Commissioner of Correction*, 26 Mass. App. Ct. 585, 590 (1988).

Based on the authorities elsewhere and based on our conclusion that the purposes of the due process requirements set forth in *Wolff* were here satisfied, we hold that the plaintiffs' constitutional rights were not violated by the actions of the

county defendants.[21] Accordingly, the defendants are entitled to a declaration to this effect and to a dismissal of the plaintiffs' § 1983 claims. Since the actions of those officials were in violation of State law, the plaintiffs are entitled to a declaration to this effect and, in order that their records not be misleading for future collateral consequences, to have removed from their prison records any indication that good time credits were revoked.

The judgments insofar as they relate to the plaintiffs' § 1983 claims are reversed, and the matters are remanded to the Superior Court for the entry of judgments in accordance with this opinion.

*So ordered.*

---

[21]Since we have concluded that the plaintiffs were not deprived of any constitutional rights, they are not entitled to attorney's fees, and we do not reach the issue whether the defendants were entitled to qualified immunity.