NATIONAL UNION FIRE INSURANCE COMPANY *vs.* DANIEL ROSE & others.[1] No. 99-P-499. January 14, 2002. *Contract,* Lease of real estate. *Landlord and Tenant,* Lease as contract.

On September 4, 1997, Keystone-Centrose Associates (Keystone), a Massachusetts partnership, as lessor, and National Union Fire Insurance Company of Pittsburgh, Pennsylvania (National Union), as lessee, entered into a major lease of office space at 99 High Street in Boston (floors 29, 30, 31, and portions of 28, totaling 87,815 square feet) for an eleven-year term.[2] For the period from April 1, 1999, through March 31, 2004, the lease rent was to be $33.75 per square foot; for the period from April 1, 2004, through March 31, 2009, the lease rent was to be $38.75 per square foot. The lease also provided for "Additional Rent" to be paid pursuant to tax and operating expense escalators. The lease also contained the following provision respecting subletting:

> "10. (a) Tenant will not . . . sublease all or any part of the Demised Premises, without Landlord's written consent. In connection with any request by Tenant for such consent to sublet, Tenant shall submit to Landlord, in writing, a statement containing the name of the proposed subtenant, such information as to its financial responsibility and standing as Landlord may reasonably require, and all of the material terms and provisions upon which the proposed sub-letting is to be made . . . . As long as no Default of Tenant is outstanding, Landlord shall not unreasonably withhold or delay Landlord's prior consent to sublettings by Tenant of all or parts of the Demised Premises. . . . *If it is finally determined by a court of competent jurisdiction that Landlord has unreasonably withheld or delayed its consent contrary to the provi-*

---

[1]Daniel Rose is a general partner of Rose Associates and Lockstone Associates Companies, both general partnerships that are general partners of Keystone-Centrose Associates, a general partnership. Frederick P. Rose and Elihu Rose are similarly general partners of Rose Associates and Lockstone Associates, which are in turn general partners of Keystone-Centrose Associates. P & O Properties Boston, Inc., is also a general partner of Keystone-Centrose Associates.

[2]The lease term was to commence on or about April 1, 1998, and to terminate on March 31, 2009.

*sions of this Article, Landlord, nevertheless, shall not be liable to Tenant for a breach of Landlord's covenant not unreasonably to withhold such consent and Tenant's sole remedy in such event shall be to enter into the proposed sub-letting. If the rent received by Tenant on account of a sublease of all or any portion of the Demised Premises exceeds the Annual Fixed Rent and Additional Rent allocated to the space subject to the sublease in the proportion of the area of such space to the area of the entire Demised Premises, plus actual out-of-pocket expenses incurred by Tenant in connection with Tenant's subleasing of such space, including without limitation reasonable attorney's fees, brokerage commissions and the cost of preparing such space for occupancy by the subtenant, Tenant shall pay to Landlord seventy-five (75) percent of such excess, monthly as received by Tenant."* (Emphasis supplied.)

National Union had expected that one of its affiliates, whose special mission was to handle claims arising out of the Central Artery Tunnel project, would occupy a portion of the leased premises (11,000 square feet on floor 28), but this fell through. Ultimately, in September, 1998, National Union proposed to sublease the same area to one of its major customers, Sheppard Riley Coughlin Insurance Agency, Inc. (Sheppard Riley), for the same per square foot rental ($33.75 increasing to $38.75, for the same respective periods as the original lease). Keystone withheld its consent based on its contention that National Union must sublease only at market rents (and, of course, market rents had gone up) and that, if National Union did not do so, it would be denying Keystone its percentage of excess rent due under the sublease.

National Union commenced this action against Keystone's general partners for breach of contract (unreasonably withheld consent), tortious interference with National Union's advantageous relationship with Sheppard Riley, and violation of G. L. c. 93A. Keystone filed counterclaims for breach of the lease, breach of the covenant of good faith and fair dealing, and violation of G. L. c. 93A. National Union moved for summary judgment on all counts; Keystone moved for partial summary judgment solely on the issue of whether it unreasonably withheld consent. A judge of the Superior Court entered an order providing (in a handwritten endorsement), as follows: "After hearing, [National Union's] motion is *Allowed* and [Keystone's] is *Denied.* Withholding of consent is unreasonable on the facts of this case. Clear language of profit sharing sublease provision does not obligate tenant to sublease at market rents in a rising market. Profit sharing is operative only '*if*' sublease rent exceeds tenant's rent, which it does not."[3] (Emphasis original.)

The judge then entered judgments for the plaintiff "on all counts" in the complaint. The judgment made no provision for damages or attorneys' fees. The defendants' appeal from that judgment focuses exclusively on the first count, i.e., breach of contract (unreasonably withheld consent).[4]

On our review of the material properly before the trial court, we can

_____

[3]The judge further opined that "[t]he landlord here is withholding sublease consent 'solely to extract an economic concession or to improve its economic position,' which is improper." See *Worcester-Tatnuck Square CVS, Inc.* v. *Kaplan,* 33 Mass. App. Ct. 499, 504 (1992).

[4]The defendants' discussion of the other two counts in their reply does not constitute argument within the meaning of Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921

confidently conclude that judgment for the plaintiff was correctly entered. The record reflects neither subterfuge nor bad faith on the part of the plaintiff. Absent those things, there is no reason to construe "Rent" in the relevant clause to mean anything different than what it usually means, i.e., consideration paid for use or occupation of property.

The defendants' reliance on *Worcester-Tatnuck Square CVS, Inc.* v. *Kaplan*, 33 Mass. App. Ct. 499 (1992), is misplaced. That case, as the trial judge correctly concluded, involved a percentage of profits lease that conferred on the landlord expectations not present here.

From all that appears, a final judgment was entered on the merits. There being no cross appeal or suggestion that Mass.R.Civ.P. 54(b), 365 Mass. 820 (1974), has application to the circumstances of this appeal, we accordingly affirm the judgment.

*So ordered.*

*Gordon P. Katz* for the defendants.

*Brian K. French* (*David S. Weiss* with him) for the plaintiff.


(1975). See *Henderson* v. *Commissioners of Barnstable County*, 49 Mass. App. Ct. 455, 459 (2000).