Brassard, J.
The plaintiff, Glenn Moniz, is an inmate lawfully committed to the custody and control of the Department of Correction (“DOC”), currently held at the Souza-Baranowski Correctional Center.[2] He filed this civil action pursuant to G.L.c. 231A and G.L.c. 249, §4, requesting judicial review of his January 15, 2002 disciplinary hearing. The plaintiff claims that he was denied a fair and impartial hearing in violation of his due process rights under both the Federal and state constitutions, and in violation of his regulatory rights pursuant to 103 CMR 430.12 et seq. Additionally, he asserts that the sanctions imposed for the one offense, specifically two terms of 15 days in isolation, for a total of 30 days in isolation, violate his statutory rights pursuant to G.L.c. 127, §40.[3] Buchannan v. Superintendent MCI-Concord, 9 Mass.App.Ct. 545 (1980). As a remedy, the plaintiff asks the court to order the disciplinary action expunged from the plaintiffs record, restore his former status, institutional job, pay-rate and privileges, and restore (100) days of lost good-time.
Both parties moved for judgment on the pleadings pursuant to Mass.R.Civ.P. 12(c) and Superior Court Standing Order 1-96. A videoconference hearing was held on January 28, 2003. For the following reasons, judgment is to enter for the defendants with respect to certiorari review of the disciplinary hearing. As to the claim for declaratory relief, the court concludes that the second term to fifteen (15) days in isolation was unlawful.
BACKGROUND
On January 9, 2002, the plaintiffs cell was searched pursuant to a routine shakedown of the L-l Housing Unit. Correction officers searched the plaintiffs paperwork with a flouroscope and discovered a two-inch “exacto” type knife blade concealed underneath a certified mail sticker on an envelope. The plaintiff was removed from the general prison population and placed into the North Special Management Unit. The next day, January 10, 2002, the plaintiff received a disciplinary report describing the offense as “major” and citing violations of Rules 2, 3, 8, 15 and 24 of the Code of Offenses as defined by 103 CMR 430.25,[4] along with a notice of hearing scheduled for January 15, 2002. The plaintiff requested that the hearing be taped and acknowledgment of this request was documented in a January 10, 2002 memo which the DOC asserts was presented to the plaintiff for his signature on January 11, 2002. The DOC maintains that the plaintiff refused to sign it. However, the plaintiff asserts that he did not receive this form until January 16, 2002, one day after the hearing, and that he repeatedly requested at the hearing to have the proceedings taped. Upon refusal of his request for the proceedings to be taped because of his failure to “provide the tape and recording equipment” as required by 103 CMR 430.12(3),[5] the plaintiff simply pled not guilty to the charges but did not assert a defense or cross-examine the correction officer who filed the report.
Based on the correction officer’s written report, the physical evidence, and the lack of evidence provided by the plaintiff in his defense, Correction Officer Susan Aiello (“Aiello”), the presiding hearing officer, found the plaintiff guilty of “unauthorized possession of a contraband (weapon).” This “major offense” provided the basis for finding that the plaintiff had violated five Rules set forth in 103 CMR 430.25.[6] The punishment imposed was two terms of 15 days in isolation (for a total of 30 days), 26 weeks loss of phone privileges, loss of general library privileges and canteen privileges, and a recommendation of 100 days loss of good time[7] in order to “remind the inmate that he alone is responsible for his actions and to follow all rules and regulations of the institution.”
The plaintiff filed an appeal pursuant to 103 CMR 430.18 on January 17, 2002 which was denied, without explanation, on January 25, 2002. He then timely filed this civil action which the court received on March 18, 2002. Due to an out-of-date cover sheet, the action was not docketed until April 22, 2002.
*13 DISCUSSION
Fair and Impartial Hearing
The plaintiffs central complaint is that he was prohibited from tape recording the disciplinary proceeding. He alleges that the form to arrange for taping the proceedings was provided to him the day after his hearing, and that without an opportunity to preserve the record for appeal, any attempt to defend himself would have been futile as the hearing officer had predetermined his guilt. Only on appeal did the plaintiff assert a defense: the DOC planted the blade in retaliation for a separate civil rights action filed by the plaintiff. Before determining whether the DOC violated its own regulations, the court will first consider the plaintiffs due process claims.
Due Process Rights
Notwithstanding the Supreme Court’s limitation on the scope of state-created liberty interests articulated in Sandin v. Conner, 515 U.S. 472, 483-84 (1995), this court assumes that the sanctions of 30 days in isolation as well as the recommendation of 100 days loss of good time are liberty interests protected by due process. Torres v. Commissioner of Correction, 427 Mass. 611, 618 (1998) (liberty interests are those that present “atypical and significant hardship in relation to the ordinary incidents of prison life). However, due process within the prison setting only entitles the plaintiff to advance written notice of the disciplinary charges, an opportunity to call witnesses and present evidence in his defense to an impartial tribunal, and a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action. Torres v. Commissioner of Correction, 427 Mass. 611, 618 (1998), citing Wolff v. McDonnell, 418 U.S. 539, 563-67 (1973). Due process does not require the disciplinary hearing to be taped. Because the Supreme Judicial Court has never held that due process rights under the Massachusetts Constitution (Part II, c. 1, §1, art. 4; arts. 1, 10, and 12 of the Declaration of Rights) are greater than those available under the Fourteenth Amendment to the United States Constitution, the process afforded the plaintiff satisfied his constitutional due process rights. Hudson v. Commissioner of Correction, 46 Mass.App.Ct. 538, 543 (1999), aff'd., 431 Mass. 1 (2000) (“the court has consistently equated as comparable, both generally and in the prison environment, the due process protections of the two fundamental documents”).
Due process does require, as do the DOC regulations, an impartial hearing officer. 103 CMR 430.13(2). However, the plaintiff merely asserts that Aiello presided over the hearing in a hurried manner and refused to tape record the proceedings. Such conclusory allegations do not support a finding that Aiello had a personal stake in the outcome of the disciplinary hearing. McGuinness v. Dubois, 1995 WL 169500 (D.Mass.) (unpublished), aff'd., 887 F.Sup. 20 (D.Mass.1996), rev’d on other grounds, aff'd. in part, 75 F.3d 794 (1st Cir. 1996) (complaint challenging impartiality of disciplinary hearing officer fails “(i]n the absence of allegations of specific facts indicating bias or other improper motive”). Accordingly, the plaintiffs due process claims must fail.
Regulatory Rights
In addition to due process rights, “[prisoners . . . retain other protections from arbitrary state action even within the expected conditions of confinement. They . . . may draw upon internal prison grievance procedures and state judicial review where available.” Drayton v. Commissioner of Correction, 52 Mass.App.Ct. 135, 139 (2001). While prison administrators have considerable discretion in the adoption and implementation of prison policies, the limits of such discretion are established by the rules and regulations promulgated by the DOC which must be complied with as agency regulations have the force of law. Royce v. Commissioner of Correction, 390 Mass. 425, 427 (1983). Therefore, even if the challenges do not support a due process claim, if the “alleged procedural irregularities constitute a violation of the department’s regulations and [if] those alleged defects would amount to substantial errors of law affecting the material rights of the plaintiff,” the plaintiff is entitled to certiorari review under G.L.c. 249, §4. Id., citing Henderson v. Commissioners of Barnstable County, 49 Mass.App.Ct. 455, 462-68 (2000).[8]
The plaintiff claims that the regulation setting forth the procedure by which to tape record the disciplinary hearing was not followed. 103 CMR 430.12(3).[9] The plaintiff claims that his request for a tape of the hearing was received, but that the form to authorize arrangement for taping the proceedings was not provided to him until the day after the hearing.[10] The DOC, however, claims that the plaintiff refused to sign the form when it was presented to him. Despite this factual dispute about whether the form was provided to the plaintiff in a timely manner, there seems to be no dispute that the plaintiffs signature on the form would only entitle him to a blank cassette tape as the plaintiff did not have a representative. The DOC explained that the DOC does not provide recording equipment and the regulations require the inmate to provide or make arrangements for such equipment. Therefore, even if the plaintiff had signed the authorization form, he would not have been able to tape the proceedings.
A strict reading of the regulation clearly provides that the DOC is not obligated to provide tape recording equipment.[11] Rather, someone from outside the prison would have to bring the equipment in for the disciplinary hearing. The plaintiff conceded that even if the form had been provided in a timely fashion, he would not have made arrangements for the equipment to be brought in. Rather, he argued that tape recording equipment was provided to him during a disciplinary hearing that took place while he was housed at MCI- *14 Norfolk, and that he was neither indigent nor represented. While the plaintiff suggested that other disciplinary hearings of other inmates were tape recorded, no evidence in an admissible form was provided to the court to support imposing an obligation not articulated in the regulations. Absent a showing that arrangements had been made by the plaintiff or that due process requires the record of the discipline proceedings to be recorded, the Court cannot impose such a duty on prison officials.[12] Drayton, 52 Mass.App.Ct. at 140. Therefore, even accepting the plaintiffs allegation that his regulatory rights were violated as he was not provided with the authorization form until the day after his hearing, the alleged defect did not result in “substantial errors of law affecting the material rights of the plaintiff.” Id.
Additionally, the plaintiff asserts that the denial of his appeal which simply states “appeal denied,” without further investigation or any explanation, violates 103 CMR 430.19 which provides for “review [of] all disciplinary dispositions regardless of outcome.” It further provides that “[t]his review shall be documented.” 103 CMR 430.19. The plaintiff asserts that the review required consideration of his newly asserted defense and an investigation into that defense. However, the regulation only requires review of the disciplinary hearing. It is undisputed that a defense was not asserted at the disciplinary hearing leaving little to review. While it is understandable that the plaintiff would like to know that his appeal was considered and to have an explanation of the reason for the denial, such expectation exceeds the regulation’s requirement. 103 CMR 430.19.
Declaratory Action
Although not argued at the hearing before this court, the plaintiff seeks a declaration pursuant to G.L.c. 231A that imposition of thirty (30) days in isolation for essentially one offense violates G.L.c. 127, §40, which expressly prohibits imposition of more than (15) days in isolation for any one offense.[13] In support of this claim the plaintiff cites to Buchannan v. Superintendent, MCI-Concord, where an inmate fought with an employee of the institution. 9 Mass App Ct. 545, 546 (1980). That inmate was found guilty of violating two rules: assaulting an employee (103 CMR 430.25(18), and engaging in conduct which disrupts or interferes with the security or orderly running of the institution (103 CMR 430.25(8).[14] These two infractions were considered to be two offenses resulting in a sentence of two terms of fifteen days each in isolation. Before the court had a chance to reach the issue, the Commissioner of Correction reduced Buchannan’s isolation time from thirty to fifteen days, rendering the issue moot. Id. at 547. However, the Court stated that the policy enunciated in §40 of using isolation sparingly cannot allow for redundant charges to support sentencing to more than fifteen days. Analogizing to the prohibition of imposing cumulative sentences for conviction of multiple offenses where the lesser offense arises out of facts identical with those which supported conviction of the greater offense, the Court was concerned with 103 CMR 430.22(2) and (8)[15] on their face because an infraction of almost any of the thirty-one rules listed in the Code of Offenses at 103 CMR 430.22 would also violate (2) and (8). Id., citing Kuklis v. Commonwealth, 361 Mass. 302, 307-09 (1972).
Here, while clearly a serious violation, the disciplinary report describes the offense as unauthorized possession of contraband (weapon). This single fact — possession of an “exacto" type knife — resulted in the violation of five rules and imposition of two terms of isolation.[16] Although a single incident may result in multiple offenses, the one fact that the plaintiff possessed the “exacto” type blade cannot be the basis for redundant charges. Kuklis, 361 Mass. at 306-07 (violation of multiple statutes without proof of an additional fact is prohibited as duplicitous). This is not a situation, for example, where an inmate got into a fight wielding a weapon. If that were the case, the single course of conduct could support a guilty finding for possession of contraband and for fighting — two offenses that may warrant two terms. Even if such a scenario provided additional facts to find other violations as well, the regulations themselves reflect the policy to use isolation sparingly: isolation “shall not exceed fifteen (15) days for any one offense and no more than thirty (30) days for all violations arising out of the same or substantially connected incident(s).” 103 CMR 423.06; 103 CMR 423.08. Accordingly, the one fact that the plaintiff possessed the “exacto” type blade can only result in one offense, not five. Kuklis, 361 Mass. at 307-09. As such, a sentence to more than fifteen days in isolation cannot be supported. G.L.c. 127, §40.
Unfortunately the plaintiff has already served his thirty days in isolation. Because this issue was not addressed at the hearing, the court will give the parties an opportunity to address possible remedies, if any. The parties will serve and file memoranda on this issue simultaneously and no later than April 30, 2003.
ORDER
It is hereby ordered that judgment is to enter for the defendants with respect to certiorari review of the disciplinary hearing as well as the plaintiffs constitutional claims.
It is also declared that the second term to fifteen (15) days in isolation was unlawful.
The parties will serve and file memoranda no later than April 30, 2003, as to possible remedies for the unlawful term of isolation.
*15 [sjhould you elect to provide this equipment and tape for this hearing, you must notify the D-Office prior to it’s [sic] arrival for proper arrangement/approval to be made. How it is to arrive, who will bring it, and when it will arrive must be clearly spelled out. Should prior arrangement not be made, this will be considered contraband and entrance will be denied. Upon completion of the hearing, arrangements should be in place for pick-up of the equipment.

 The record did not reveal for what the plaintiff was convicted or the length of his sentence.

 General Laws c. 127, §140 provides that “[flor the enforcement of discipline, an inmate . . . may ... be confined, for a period not to exceed fifteen days for any one offense, to an isolation unit.”

 The Code of Offenses pertinent to this case are:
(2) “Violating any department rule or regulation, or any other rule, regulation, or condition of an institution or community based program.”
(3) “Failure to keep one’s person or one’s quarters in accordance with institutional rules.”
(8) “Conduct which disrupts or interferes with the security or orderly running of the institution.”
(15) “Possession, manufacture, or introduction of a gun, firearm, explosive, ammunition, weapon, sharpened instrument, knife or tool.”
(24) “Possession of items, including money or currency, not authorized for retention or receipt by the inmate.”
103 CMR 430.25.

 The tape recording regulation provides that:
[a]n inmate shall be permitted to record a hearing before a hearing officer through use of tape recording equipment provided by the inmate or his representative. An indigent inmate, as defined by 103 CMR 481.06, shall be afforded a tape of the hearing upon prior written request by the inmate or his representative. The inmate shall be required to deliver any tape, so used, to the hearing officer at the close of the disciplinary hearing. The hearing officer shall deliver such tape to the Superintendent or his designee who shall be responsible for the safekeeping of the tape. The inmate or his representative shall have access to the tape for future reference and his representative shall be permitted to make and retain for his own use a duplicate tape either at the hearing or thereafter from the original tape.
103 CMR 430.12(3).

 Supra n.4.

 Although the statute which authorizes the award of statutory good time and forfeiture of such good time for disciplinary infractions, G.L.c. 127, §129, was repealed July 1, 1994, by St. 1993, c. 432, §10, the repealing provision provided that the law in effect at the time an offense is committed governs the sentence for that offense. Therefore, the now repealed provision applies to the plaintiff as his offense was committed prior to July 1, 1994. Henderson v. Commissioners of Barnstable County, 49 Mass.App.Ct. 455, 459-60 (2000). See also McGuinness v. Dubois, 75 F. 3d 794, 797 n.3 (1st Cir. 1996).

 Because a declaratory action only provides a remedy for violations of “rules and regulations" that are “consistently repeated,” G.L.c. 231A, §2, the only remedy for disciplinary sanctions imposed in violation of the department’s regulations is in the nature of certiorari under G.L.c. 249, §4. Drayton, 52 Mass.App.Ct. at 139.

 Supran.5.

 The authorization form states that the request for a taped disciplinary hearing was received and approved per 103 CMR 430.12(3). It states further that:

 When pressed on how this regulation works in practice the DOC maintained that tape recording equipment was never provided by the DOC, even if an inmate was indigent. Because the plaintiff in this case is not indigent, the indigency provisions do not apply and are not at issue in the present dispute. The court is troubled by the suggestion that the regulation only provides indigent inmates with the right to a blank cassette tape.

 Further consideration was given the unfortunate consequence that the plaintiff refused to defend himself in the proceedings because he felt that without the tape of the proceedings his defense would be futile. Because review of a disciplinary hearing is a very deferential review under G.L.c. 249, §4, as long as the record provides “substantial evidence” to support the hearing officer’s findings, the court has no authority to reverse the agency decision. Puleio v. Commissioner of Correction, 52 Mass.App.Ct. 302, 305 (2001).

 Supran.3.

 Supra n.4.

 Supran.4.

 Supra n.4.