COUNTY OF BARNSTABLE & others[1] *vs.* AMERICAN FINANCIAL CORPORATION.

No. 99-P-693.

Barnstable. January 4, 2001. - March 23, 2001.

Present: ARMSTRONG, C.J., JACOBS, & CYPHER, JJ.

*Insurance,* Liability insurance, Construction of policy, Insurer's obligation to defend. *Contract,* Insurance. *Indemnity.*

The clear and unambiguous language of an exclusionary clause in a public officials liability insurance policy, barring coverage for claims "arising out of . . . the operation of adult . . . detention facilities" operated to exclude coverage for a claim brought against a county that operated a house of correction by an inmate confined therein [215-218]; and the insurer had no duty to defend and indemnify [218-219].

The doctrine of reasonable expectations did not operate to extend insurance coverage to a clearly and unambiguously stated exclusion in a policy of insurance. [218]

CIVIL ACTION commenced in the Superior Court Department on February 6, 1997.

The case was heard by *Gerald F. O'Neill, Jr.,* J., on motions for summary judgment.

*Robert S. Troy* for the plaintiffs.

*William P. Breen, Jr.,* for the defendant.

CYPHER, J. The plaintiffs, county of Barnstable and two county commissioners (collectively Barnstable County or county) appeal from the allowance of summary judgment in favor of the defendant, American Financial Corporation, doing business as Great American Insurance Companies, Inc. (Great American). Claiming that it was entitled to defense and indemnification from Great American under the county's public officials liability policy for a civil action brought by an inmate of the county jail

---

[1]Joan W. Doane and Robert A. O'Leary, individually and in their capacity as Barnstable County commissioners.

and house of correction, the county brought an action for declaratory judgment and injunctive relief.[2] The inmate alleged that the county commissioners violated his statutory and constitutional rights when they voted, pursuant to G. L. c. 127, § 129, to revoke his statutory good time credits after he had tested positive for illegal drug use.[3]

The policy provided coverage to the county and the county's lawfully elected officials for "all sums which the Insured shall become legally obligated to pay as damages . . . because of *Wrongful Act(s)* rendered in the discharge of the *Public Entity* duties to which this insurance applies" (emphasis original). Great American denied coverage based on an exclusionary clause that reads as follows:

> "This insurance does not apply to any claims made against the Insured . . . arising out of operational law enforcement functions and activities, including the operation of adult and juvenile detention facilities."

Both parties moved for summary judgment, and the judge concluded that the exclusion applied to the underlying lawsuit because "[t]he imposition of disciplinary sanctions [by the county commissioners] constituted an operational law enforcement function included in the operation of a detention facility." The county argues that the judge erred because the county commissioners did not engage in an "operational law enforcement" function when they voted pursuant to their statutory duty to revoke the inmate's good time credits, that the Barnstable

---

[2] For details of the underlying claim, see *Henderson* v. *Commissioners of Barnstable County*, 49 Mass. App. Ct. 455 (2000).

[3] The commissioners had acted pursuant to G. L. c. 127, § 129, which provided for automatic sentence reductions for prisoners who have "faithfully observed all the rules" . . . and "[i]f a prisoner violates any rule of his place of confinement, . . . the county commissioners . . . upon the recommendation and evidence submitted to them . . . , in writing by the principal officer, or officer in charge, shall decide what part, if any, of such good conduct deduction from sentence or sentences shall be forfeited by such violation." This statute was repealed by St. 1993, c. 432, § 10, but applied to the inmate because the offense occurred before the July 1, 1994, effective date.

This court held in *Henderson* v. *Commissioners of Barnstable County*, 49 Mass. App. Ct. 455, 462, 467-468 (2001), that the county commissioners' action had contravened applicable disciplinary regulations, but had not violated the inmate's constitutional rights.

County jail was not a detention facility, that the exclusionary clause was ambiguous, and that the doctrine of reasonable expectations required Great American to provide coverage. We affirm.

The interpretation of an insurance policy is a "question of law for the trial judge, and then for the reviewing court." *Cody* v. *Connecticut Gen. Life Ins. Co.*, 387 Mass. 142, 146 (1982). Unambiguous words in an insurance policy exclusion must be interpreted in their usual and ordinary sense. *Bagley* v. *Monticello Ins. Co.*, 430 Mass. 454, 457 (1999). A term is ambiguous only if it is susceptible of more than one meaning and reasonably intelligent persons would differ as to which meaning is the proper one. *Lumbermens Mut. Cas. Co.* v. *Offices Unlimited, Inc.*, 419 Mass. 462, 466 (1995). An ambiguity is not created simply because a controversy exists between the parties. *Ibid.* "Nor does the mere existence of multiple dictionary definitions of a word, without more, suffice to create an ambiguity, for most words have multiple definitions." *Citation Ins. Co.* v. *Gomez*, 426 Mass. 379, 381 (1998). An exclusionary clause may be ambiguous, however, when read in the context of the entire policy or as applied to the subject matter. *Jefferson Ins. Co. of N.Y.* v. *Holyoke*, 23 Mass. App. Ct. 472, 475-476 (1987).

Where language in an insurance policy is found to be ambiguous, the exclusion is strictly construed and "doubts as to the intended meaning of the words must be resolved against the insurance company that employed them and in favor of the insured." *August A. Busch & Co.* v. *Liberty Mut. Ins. Co.*, 339 Mass. 239, 243 (1959). See *Hakim* v. *Massachusetts Insurers' Insolvency Fund*, 424 Mass. 275, 282 (1997). When the terms of an "exclusion are 'plain and free from ambiguity' " the court does not construe them strictly against the insurer. *Bagley* v. *Monticello Ins. Co.*, 430 Mass. at 457 n.2 (citation omitted).

1. *Interpretation of the exclusionary clause.* We are of the opinion that the exclusionary clause "arising out of operational law enforcement functions and activities, including the operation of adult and juvenile detention facilities" is clear and free from ambiguity. Construing these words in their usual and ordinary meaning, we think that the exclusionary clause is not readily susceptible of more than one meaning.

:

The county asserts that the exclusion should be construed to include only conduct that occurred during the period prior to conviction, such as investigation, arrest, and prosecution, as well as other law enforcement functions, such as traffic control and assistance in emergency operations. We reject that argument. The language in the exclusionary clause is not reasonably susceptible of such an interpretation.

First, the term "law enforcement functions and activities," given its plain meaning, is a broad term encompassing a continuum that includes corrections. This interpretation is supported by Federal statutes. See 29 U.S.C. § 630 (1999) (law enforcement officer is someone whose position is primarily investigation, apprehension, or detention of individuals suspected or convicted). Thus, standing alone the term "law enforcement" can include the incarceration of convicts.

Second, by adding the phrase "including the operation of adult and juvenile detention facilities," the policy leaves no doubt that the exclusion applies to claims arising out of the operation of a county jail or a house of correction. The county attempts to support its position with cases from outside Massachusetts. "How other jurisdictions have interpreted the same or similar exclusions is . . . of little assistance since the analysis of the exclusionary language is dependent upon the nature and context of the claims in the underlying action." *Camp Dresser & McKee, Inc.* v. *Home Ins. Co.*, 30 Mass. App. Ct. 318, 324 (1991).[4]

The county also claims that the term "detention facility," be-

---

[4]Nevertheless, these cases do not assist the county. In two of the cases the term "law enforcement" was not further clarified by the clause "including the operation of adult and juvenile detention facilities." See *Imperial Cas. & Indem. Co.* v. *Home Ins. Co. of Manchester, N.H.*, 727 F. Supp. 917, 918-919 (M.D. Pa. 1990) (exclusion referring to "law enforcement activities," without further definition in the policy, did not apply to an underlying action which arose while decedent incarcerated in prison); *Western World Ins. Co.* v. *Reliance Ins. Co.*, 892 F. Supp. 659, 664-665 (M.D. Pa. 1995) (in interpreting exclusion for claims "arising out of any act or omission of your police department or any other law enforcement agency," the court concluded that temporary detention of an arrestee is a law enforcement activity when performed by a police officer, unlike incarceration following an adjudication or plea of guilt). In the one case in which the exclusion contained the same specific clause "including the operation of adult and juvenile detention facilities," the court, focusing on the word "operation," found the exclusion to be

ing undefined in the policy, did not include the Barnstable County house of correction because the term referred to temporary confinement as would occur in a police lock-up. The phrase "detention facility" is a broad term, encompassing many kinds of detention. See 521 Code Mass. Regs. § 15.1 (1998) ("detention facilities shall include, but not be limited to, police stations, prisons, jails, houses of correction, juvenile detention centers, reformatories and other institutional occupancies where occupants are under some degree of restraint or restriction for security reasons"). The fact that the word "detention" may be treated as referring to a period of confinement prior to conviction, as in "pretrial detention" or "preventative detention," does not rule out its application to any other period of confinement. A reasonable interpretation of the word "detention" includes postconviction incarceration. See generally Black's Law Dictionary 459 (7th ed. 1999) (defining detention as "the act or fact of holding a person in custody; confinement or compulsory delay").

We also decide that the exclusionary clause did not become ambiguous when read in the context of the entire policy because the exclusion did not contradict other portions of the policy or negate its purpose. See, e.g., *Preferred Mut. Ins. Co.* v. *Gamache*, 42 Mass. App. Ct. 194, 198-199 (1999). Nor did the exclusionary clause become ambiguous when applied to the facts of the underlying claim. First, the lawsuit against the county was based on the commissioners' vote to revoke statutory good time credits, the purpose of which was to deter inmate misconduct. The lawsuit was, therefore, based on a claim "arising out of . . . the operation of" an adult detention facility. See *Amado* v. *Superintendent, Mass. Correctional Inst. at Walpole*, 366 Mass. 45, 48 (1974) (purpose of good time statute is to encourage orderly conduct of inmates). Second, despite the county's argument that the Barnstable County charter does not bestow police power on the commissioners, section 3-2 of the charter provides that the "board of county commissioners shall

---

ambiguous as applied to the facts of the underlying claim (for wrongful termination). *Houpe* v. *Statesville*, 128 N.C. App. 334, 349 (1998). The court found that the phrase, in context, suggested "connection with the operation of institutional facilities." *Ibid.*

cause . . . the laws . . . of the county to be enforced." We conclude that, when the commissioners voted to reduce the inmates' good time credits, they were exercising (whether validly or invalidly) their power to cause the laws of the county to be enforced.

2. *The doctrine of reasonable expectations.* "Assuming that [the doctrine of reasonable expectations] applies, even in the absence of ambiguity . . . it is clear that the standard it imposes is an objective one." *Mitcheson* v. *Izdepski,* 32 Mass. App. Ct. 903, 906 (1992) (citations omitted). See *Hakim* v. *Massachusetts Insurer's Insolvency Fund,* 424 Mass. at 282. Applying such a standard, we find nothing in the record before us indicating that the "structure, content, manner of printing of the policy, or methods and practices of marketing" created a reasonable expectation that the county acquired more extensive insurance coverage than it received within the express terms of the policy in question. *Jefferson Ins. Co. of N.Y.* v. *Holyoke,* 23 Mass. App. Ct. at 477, quoting from *Davenport Peters Co.* v. *Royal Globe Ins. Co.,* 490 F. Supp. 286, 291-292 (D.Mass. 1980). Nor does our interpretation of this exclusion "swallow the policy." *Camp Dresser & McKee, Inc.* v. *Home Ins. Co.,* 30 Mass. App. Ct. at 323. The commissioners' duties go beyond activities "arising out of operational law enforcement functions and activities." See G. L. c. 34, § 14 (detailing some, but not all, of the commissioners' duties).[5]

3. *Duty to defend and indemnify.* In light of the application of the exclusionary clause, we reject the county's argument that Great American violated its duty to defend and indemnify. See *Bagley* v. *Monticello Ins. Co.,* 430 Mass. at 458. The county argues that Great American violated its duty to defend because Henderson's allegations that his constitutional rights were

---

[5]In support of its argument that the actions of the county did not arise from "operational law enforcement functions" but instead from supervisory or management functions, the county requested that we take judicial notice of an action filed against it by an employee of the house of correction in an employment dispute in which Great American advised the county that it would indemnify the county for damages under a reservation of rights and then authorized a settlement and indemnified the county. Without addressing whether such a matter is appropriate for judicial notice, we note that, rather than supporting the county's position, this example illustrates the value of the policy notwithstanding our interpretation of the exclusionary clause.

violated constituted claims that were covered by the policy. The county relies on the policy's coverage of "any actual or alleged violation of any federal, state or local civil rights." It is well established in insurance law that "[i]t is the source from which" the alleged harm in the underlying complaint "originates rather than the specific theories of liability alleged in the complaint which determine the insurer's duty to defend." *Ibid.*, quoting from *New England Mut. Life Ins. Co.* v. *Liberty Mut. Ins. Co.*, 40 Mass. App. Ct. 722, 727 (1996). This concept is implicitly contained within the exclusionary clause at issue by the use of the phrase "arising out of," which is read expansively and directs our inquiry to the conduct complained of in the underlying lawsuit. *Bagley* v. *Monticello Ins. Co.*, *supra* at 457. Thus, the commissioners' vote to reduce Henderson's good time credits, rather than Henderson's allegations that his constitutional rights were violated, determines whether Great American has a duty to defend. See *ibid.* Henderson's claims were based on conduct described in the exclusionary clause, and consequently, Great American had no duty to defend the county under the terms of the policy. With no duty to defend, Great American does not have a duty to indemnify. *Id.* at 459.

4. *Punitive damages.* Based on our ruling in the underlying case, *Henderson* v. *Commissioners of Barnstable County*, 49 Mass. App. Ct. 455, 467-468 (2000), that there were no constitutional violations, we do not reach the issue of whether the policy would cover punitive damages.

*Judgment affirmed.*