WILLIAM C. SULLIVAN *vs.* SOUTHLAND LIFE INSURANCE
COMPANY.

No. 05-P-1102.

Hampden. March 15, 2006. - September 25, 2006.

Present: ARMSTRONG, C.J., BECK, & TRAINOR, JJ.

*Insurance,* Life insurance, Construction of policy. *Contract,* Construction of
contract, Insurance. *Words,* "Single premium."

The provisions of a life insurance policy, construed as a whole, unambigu-
ously provided the insured with flexible coverage initiated by a single
premium payment that lapsed when his paid premiums became insufficient.
[442-444]

CIVIL ACTION commenced in the Superior Court Department on
October 3, 2002.

The case was heard by *Tina S. Page,* J., on motions for
summary judgment.

*Robert L. Ciociola* for the defendant.

*William C. Flanagan* for the plaintiff.

BECK, J. The plaintiff policy holder, William C. Sullivan,
brought an action in Superior Court seeking specific perfor-
mance of an insurance contract. He alleged that the defendant
insurance company, Southland Life Insurance Company (South-
land), breached the terms of the policy it issued to him when it
cancelled the policy eight years after it was issued because the
initial premium, together with credited interest, was insufficient
to keep the policy in effect any longer. The plaintiff claimed
that his policy was a whole life policy and that he intended his
initial payment to serve as payment in full. The Superior Court
judge agreed and entered summary judgment in favor of the
plaintiff.

Southland appeals, asserting that the judge misinterpreted the
relevant language in the policy. For the reasons set forth below,

we reverse the Superior Court judge's grant of summary judgment in favor of the plaintiff and reverse the denial of the defendant's motion for summary judgment. See *Boston* v. *Boston Police Patrolmen's Assn.*, 443 Mass. 813, 823 (2005).

*Facts.* We limit our review of the facts to the terms of the policy. Where the language of a contract is clear and unambiguous, summary judgment is an appropriate vehicle for judicial interpretation because the court may interpret the meaning of the contract as a matter of law without resort to extrinsic evidence or determinations of fact. See *Lumber Mut. Ins. Co.* v. *Zoltek Corp.*, 419 Mass. 704, 707 (1995); *Suffolk Constr. Co., Inc.* v. *Lanco Scaffolding Co., Inc.*, 47 Mass. App. Ct. 726, 729 (1999).

The following facts are undisputed. Southland issued a universal life insurance policy in the amount of $200,000 to the plaintiff, William C. Sullivan,[1] in exchange for an initial payment of $29,300.[2] The policy took effect on April 12, 1994. The policy is a flexible premium adjustable policy, with "flexible premiums payable until Age 100."

The universal life insurance policy provided the insured a death benefit and accumulated cash value on a tax-deferred basis. The insurer paid interest at a rate competitive with other investments. Such a policy provided flexibility to the insured because the insured was able to vary the death benefit, premium, and timing of premium payments.

The policy's accumulation value, as described in the policy, accounted for the sum of all premiums received on the policy's issue date, accumulated interest, monthly deductions (i.e., cost of insurance benefits and administrative expenses), withdrawals, and surrender charges. The policy provided for a guaranteed minimum interest rate of four percent per year. The cost of insurance was determined by a complex mathematical formula set out in the policy.

The policy schedule on page three-A of the policy includes a line labeled "PLANNED PERIODIC PREMIUM." The space next to it is blank. The line below the planned periodic premium notation sets out the mode and describes it as "Mode: Single

---

[1]Sullivan was an insurance agent licensed to sell life insurance.

[2]The policy contains an entry for a "FACE AMOUNT" of $100,000 and an "ADDITIONAL TERM INSURANCE AMOUNT" of $100,000.

Premium." At the bottom of the same page, the policy reads: "NOTE: IT IS POSSIBLE THAT COVERAGE WILL TERMINATE PRIOR TO AGE 100 IF NO PREMIUMS ARE PAID FOLLOWING PAYMENT OF THE FIRST YEAR PREMIUM OR IF THE PLANNED PREMIUMS ARE INSUFFICIENT" (emphasis in original). Page three-C of the policy lists "$.00" next to the words "LIFE INSURANCE" and under the column header "Monthly Premium."

Pages five and thirteen of the policy use similar language as the provision in all capital letters on page three. On page five, next to the heading "Maturity at Age 100," the policy reads: "It is possible that the coverage will terminate prior to age 100 if premiums aren't paid regularly or are insufficient. Coverage may be affected also by changes in interest rates and monthly deductions." Page thirteen of the policy states: "Insurance automatically continues in force without regular premium payments as long as the net cash value is sufficient to cover each monthly deduction as it becomes due."

On July 2, 2002, more than eight years after Sullivan's initial payment to Southland, Southland sent Sullivan a letter informing him that, unless further premiums were paid, the policy would lapse as of August 11, 2002. Sullivan filed a complaint for breach of contract in Superior Court on October 3, 2002.[3]

On March 28, 2005, a Superior Court judge considered the parties' cross motions for summary judgment and granted Sullivan's motion. The judge found, as a matter of law, that the policy's use of the term "single premium" next to "payment mode," and of zeros under "monthly premium," was unambiguous and showed that the parties intended a single, one-time,

[3]Sullivan did not include an allegation for misrepresentation in his complaint and has always crafted his claim as one for breach of contract. There was disputed evidence presented in the cross motions for summary judgment that the agent for the insurer told Sullivan that the policy would remain in effect until 2025 based on the premium at issue here. There was further evidence that when Sullivan called the insurer's office, he was told that the notice that a premium was due was an error. Thus, Southland asserted, in the trial court and here, that Sullivan's claim was for misrepresentation and time barred by G. L. c. 175, § 181. Since Sullivan did not raise misrepresentation as a claim, we need not consider whether he had a viable claim on that legal theory.

undivided payment. On March 31, 2005, a judgment entered requiring that Sullivan's insurance policy be given full force and effect until April 12, 2025, in the amount of $200,000. Southland appeals.

*Discussion.* The interpretation of an insurance policy is a question of law for the trial judge and the reviewing court. *Norfolk & Dedham Mut. Fire Ins. Co.* v. *Quane*, 442 Mass. 704, 707 (2004); *Commerce Ins. Co.* v. *Theodore*, 65 Mass. App. Ct. 471, 471 n.2 (2006). See *Cody* v. *Connecticut Gen. Life Ins. Co.*, 387 Mass. 142, 146 (1982). We review a trial judge's interpretation de novo. See *Commerce Ins. Co.* v. *Theodore, supra* at 472-473. If an insurance policy is unambiguous, its interpretation is appropriately decided upon summary judgment. See *Cody* v. *Connecticut Gen. Life Ins. Co., supra* at 146. The terms of an insurance policy will be interpreted according to the "fair meaning of the language used, as applied to the subject matter." *Davis* v. *Allstate Ins. Co.*, 434 Mass. 174, 179 (2001), quoting from *Bilodeau* v. *Lumbermens Mut. Cas. Co.*, 392 Mass. 537, 541 (1984). See *Cody* v. *Connecticut Gen. Life Ins. Co., supra* at 146.

We construe the provisions of an insurance policy according to their plain meaning if they are unambiguous. See *Money Store/ Massachusetts, Inc.* v. *Hingham Mut. Fire Ins. Co.*, 430 Mass. 298, 300 (1999); *County of Barnstable* v. *American Financial Corp.*, 51 Mass. App. Ct. 213, 215 (2001). "This is consistent with our long-standing policy that the rules governing the interpretation of insurance contracts are the same as those governing the interpretation of any other contract." *Money Store/Massachusetts, Inc.* v. *Hingham Mut. Fire Ins. Co., supra*, quoting from *Cardin* v. *Royal Ins. Co.*, 394 Mass. 450, 453 (1985). "The objective is to construe the contract as a whole, in a reasonable and practical way, consistent with its language, background, and purpose." *Massachusetts Property Ins. Underwriting Assn.* v. *Wynn*, 60 Mass. App. Ct. 824, 827 (2004) (quotations and citation omitted). "A contract is to be construed to give reasonable effect to each of its provisions." *J.A. Sullivan Corp.* v. *Commonwealth*, 397 Mass. 789, 795 (1986). See *Kingstown Corp.* v. *Black Cat Cranberry Corp.*, 65 Mass. App. Ct. 154, 158 (2005).

"A term [in an insurance policy] is ambiguous only if it is susceptible of more than one meaning and reasonably intelligent persons would differ as to which meaning is the proper one . . . . An ambiguity is not created simply because a controversy exists between the parties. . . . 'Nor does the mere existence of multiple dictionary definitions of a word, without more, suffice to create an ambiguity, for most words have multiple definitions.' " *County of Barnstable* v. *American Financial Corp.*, *supra* (citations omitted). Furthermore, "difficulty in comprehension does not equate with ambiguity." *Massachusetts Property Ins. Underwriting Assn.* v. *Wynn, supra* at 827.

Reviewing Sullivan's policy as a whole, we conclude that its terms are unambiguous. We therefore adopt the defendant's interpretation of its terms. The policy provided Sullivan with flexible coverage initiated by a single premium payment that could lapse should his paid premiums become insufficient. Although the mode of payment in the policy was listed as a "single premium," the text, as set out in all capital letters on the same page, plainly stated: "NOTE: IT IS POSSIBLE THAT COVERAGE WILL TERMINATE PRIOR TO AGE 100 IF NO PREMIUMS ARE PAID FOLLOWING PAYMENT OF THE FIRST YEAR PREMIUM OR IF THE PLANNED PREMIUMS ARE INSUFFICIENT." Similar language located on pages five and thirteen of the policy reinforces the concept that Sullivan's initial payment in the amount of $29,300 might not be sufficient to continue coverage until Sullivan turned 100 years old. These statements clearly indicated that the coverage could lapse if the premiums planned were insufficient.

Southland's interpretation of the policy gives a reasonable meaning to all of the policy's provisions. See *J.A. Sullivan Corp.* v. *Commonwealth, supra*; *Kingstown Corp.* v. *Black Cat Cranberry Corp., supra.* It uses the term "single premium" as a mode for payment for an extended increment of coverage accruing substantial interest for the insured. A single premium policy, unlike a monthly premium policy, would entail no mandatory payment obligations by the insured because only a single payment would be due — the initial payment. The insured is thus left with the opportunity to watch his initial payment accrue interest, and the flexibility either to terminate his policy when

that payment becomes insufficient or to pay further premiums to continue coverage.

In contrast, Sullivan's interpretation of the policy fails to give full force and effect to all of the policy's provisions. If we were to accept the notion that Sullivan's $29,300 payment was all that was necessary to entitle him to a $200,000 payout upon turning 100 years old, we would be reading the language on pages three, five, and thirteen out of the policy. The trial judge erred in relying solely on a dictionary definition of the word "single" and ignoring the consistent language used throughout the policy.

The plaintiff urges, and the judge below reasoned, that where "there are two rational interpretations of policy language, the insured is entitled to the benefit of the one that is more favorable to it." *Hazen Paper Co.* v. *United States Fid. & Guar. Co.*, 407 Mass. 689, 700 (1990). Indeed, our cases establish the sound proposition that, where language in an insurance policy is ambiguous, "doubts as to the intended meaning of the words must be resolved against the insurance company that employed them and in favor of the insured." *County of Barnstable* v. *American Financial Corp.*, 51 Mass. App. Ct. at 215, quoting from *August A. Busch & Co.* v. *Liberty Mut. Ins. Co.*, 339 Mass. 239, 243 (1959). See *Cody* v. *Connecticut Gen. Life Ins. Co.*, 387 Mass. at 146; *Vickodil* v. *Lexington Ins. Co.*, 412 Mass. 132, 135 (1992); *City Fuel Corp.* v. *National Fire Ins. Co. of Hartford*, 446 Mass. 638, 640 (2006). However, when the terms of an insurance policy are unambiguous, as is the case in this dispute, the insured is not entitled to such a favorable inference. *County of Barnstable* v. *American Financial Corp., supra.* The trial judge erred when she relied on this principle to make the threshold determination that the policy was ambiguous.[4]

*Conclusion.* We therefore vacate the grant of summary judg-

---

[4]Similarly, the judge erred in considering any parol evidence in this case, including any alleged representations made by Southland employees. *Cady* v. *Marcella*, 49 Mass. App. Ct. 334, 338 (2000) (even in absence of merger clause, where written terms of contract are not ambiguous on their face, extrinsic evidence is not admissible to contradict them). Sullivan makes no claims that any of the alleged representations constituted fraud, and we decline to consider parol evidence on the basis of an alleged negligent misrepresentation where there is a fully integrated contract between the parties. See *Sound Techniques, Inc.* v. *Hoffman*, 50 Mass. App. Ct. 425, 429-433 (2000). As previously noted, Sullivan asserted no separate claim of misrepresentation but

ment in favor of Sullivan, and reverse the denial of Southland's motion for summary judgment. We remand the case to the Superior Court for entry of judgment in favor of Southland.

*So ordered.*

---

only argued, in the context of his contract action, that negligent misrepresentations by Southland employees were admissible on the issue of contract interpretation.