Neel, Stephen E., J.
Plaintiffs J.D. Venture Corporation and John P. Cronin[2] (J.D. Venture) seek a declaration that defendant Western World Insurance Company (Western World) is obligated to defend and indemnify plaintiffs in a lawsuit brought by Shane Rabbitte (Rabbitte Action). The Rabbitte Action arises out of injuries Rabbitte suffered while working as an employee of Kerry Electric, Inc. (Kerry Electric) on a renovation project for J.D. Venture.
Western World moves for summary judgment, on the basis that the “Exclusion — Injury to Independent Contractors” provision in the commercial general lia-biliiy policy it issued to J.D. Venture bars coverage for defense of claims such as Rabbitte’s. J.D. Venture also moves for summary judgment. For the following reasons, J.D. Venture’s motion will be denied, and Western World’s motion will be allowed.
BACKGROUND
The undisputed facts, viewed in the light most favorable to J.D. Venture, are as follows.
1. The Western World Policy
Western World issued Commercial General Liability Policy No. NPP 841095 to J.D. Venture for the period July 3, 2003 to July 3, 2004 (Polity). The Policy provides that:
[Western World] will pay those sums that the insured becomes legally obligated to pay as damages because of “bodily injury” or “property damage” to which this insurance applies. [Western World] will have the right and duty to defend the insured against any “suit” seeking those damages. However, we will have no duty to defend the insured against any “suit” seeking damages for “bodily injury” or “property damage” to which this insurance does not apply.
The Policy also contains an endorsement entitled “Subcontractors — Definition of Adequately Insured” which applies to “that portion of the operations performed for the insured by ‘adequately insured’ subcontractors,” and which provides that “[a]ny subcontractor not ‘adequately insured’ and whose work is not excluded by the policy, will be considered an employee of the insured for the sole purpose of computing premium.” In addition, the Policy contains an “Exclusion — Injury to Independent Contractors” which states that the Policy does not apply to “any claim arising from injuiy to an independent contractor or to an ‘employee’ or ‘temporary worker’ of an independent contractor hired by you or by any subcontractor” (Exclusion).
II. Undisputed Facts
J.D. Venture is the owner of The Sanctuary restaurant in Boston (restaurant). Prior to opening the restaurant, J.D. Venture undertook to renovate the premises in which the restaurant was to be located (renovation). In connection with its purchase of the Policy, J.D. Venture completed an application for insurance, dated July 10, 2003, with Malcolm Parsons Insurance Agency, Inc. (Malcolm & Parsons). That application described the renovation as “cosmetic renovations to restaurant.” Western World’s Motion, Exhibit L. Under the item headed “Contractor,” J.D. Venture wrote “JPC Ventures Corp.” (JPC), which the applicant (J.D. Venture) stated had for “20+” years engaged in “this type of project...”
J.D. Venture thereafter signed an application dated July 23, 2003, apparently prepared by Malcolm & Parsons for submission to Western World. That application listed neither a contractor nor subcontractors.
J.D. Venture hired Peter McAuliffe as the Project Manager. McAuliffe opened the restaurant site to admit contracted tradespersons, and advised them as to what was required based on orders given by plaintiff Cronin or others. In addition, McAuliffe made notes of the progress of the work and checked portions of the work to make sure it was done. McAuliffe also kept track of materials, the number of tradespersons on site, and the hours that they worked. While there is a dispute as to whether McAuliffe directed Kerry Electric employees, it is undisputed that McAuliffe directed the work of J.D. Venture’s employee laborers working on the renovation. J.D. Venture admits that it hired Kerry Electric.
In February 2005, J.D. Venture received a letter from Rabbitte’s attorney informing it of a potential claim for injuries suffered by Rabbitte while working on the renovation. J.D. Venture reported the claim to Western World. On March 7, 2005 Western World issued a reservation of rights letter in which it stated that if “Western World determines that Rabbitte was working for an independent contractor hired by you or by any subcontractor, then Western World is advising you that the claims will not be covered under your policy.” On May 27, 2005, Western World denied coverage to J.D. Venture for Rabbitte’s claims.
Rabbitte filed suit against J.D. Venture, alleging that he had suffered injuries when an air conditioning unit fell and struck him while he worked on the renovation as an employee of Kerry Electric. On January 11, 2008, counsel for J.D. Venture informed Western World that the Exclusion did not apply to Rabbitte’s claims and could not be the basis for denying coverage to J.D. Venture. Western World responded on February 15, 2008, informing counsel for J.D. Venture that it was maintaining its denial of coverage. This declaratory judgment action followed.
*532 DISCUSSION
I. Summary Judgment
The court may grant summary judgment where there are no genuine issues as to any material fact and where the moving party is entitled to summary judgment as a matter of law. Mass.R.Civ.P. 56(c); Cassesso v. Comm'r of Corr., 390 Mass. 419, 422 (1983); Cmty. Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976). Where no material facts are disputed, and only the interpretation of the insurance policy is raised, “a question of law is raised and may be resolved by way of summary judgment.” Theriault v. Mut. Fire Ins. Co., No. 96-0074, 1999 Mass.Super. LEXIS 355, at *4 (Mass.Super. August 26, 1999). Summary judgment is appropriate here because no material facts are disputed by the parties.
II. Western World’s Duty to Defend and Indemnify
Western World’s primary argument is that the Exclusion precludes coverage for the putative subcontractor, Kerry Electric. Specifically, Western World contends that, because there was no general contractor, Kerry Electric was an independent contractor, not a subcontractor. J.D. Venture counters that J.D. Venture was itself the contractor for the renovation, that Kerry Electric was therefore a subcontractor, and thus that the Exclusion does not apply. Accordingly, J.D. Venture contends, Western World has the duty to defend and indemnify J.D. Venture for the litigation and settlement that arose out of the Rabbitte Action.
The interpretation of an insurance policy is a question of law for the court. Sullivan v. Southland Life Ins. Co., 67 Mass.App.Ct. 439, 442 (2006). Where the policy language is unambiguous, summary judgment is appropriate because “the court may interpret the meaning of the contract as a matter of law without resorting to extrinsic evidence or determinations of fact." Id. at 440. As with any contract, the terms of the policy are given their plain and ordinary meaning. Id. at 442. Specifically, interpretation of an insurance policy entails looking at the entire policy and construing it in a reasonable manner that is consistent with its language, background, and purpose. Id.
An insurance policy is considered ambiguous “when its language is reasonably susceptible of more than one meaning.” Nelson v. Cambridge Mut. Fire Ins. Co., 30 Mass.App.Ct. 671, 673 (1991) (referencing Jefferson Ins. Co. v. Holyoke, 23 Mass.App.Ct. 472, 474-75 (1987)). Words that appear clear and unambiguous may actually be ambiguous when “read in the context of the entire insurance contract, or as applied to the subject matter.” Id. Moreover, when the terms of an insurance policy are ambiguous, any doubt “as to the intended meaning of the words must be resolved against the insurance company that employed them and in favor of the insured.” Sullivan at 444 (quoting County of Barnstable v. American Financial Corp., 51 Mass.App.Ct. at 215, quoting from August A. Busch & Co. v. Liberty Mut. Ins. Co., 339 Mass. 239, 243 (1959)); Middlesex Ins. Co. v. American Employment Ins. Co., 9 Mass.App.Ct. 855, 856 (1980) (concluding that any ambiguous insurance policy provision “must be construed against the insurer, the author of the policy”); Biathrow v. Continental Casualty Co., 371 Mass. 249, 251 (1976) (ruling that ambiguities in an insurance policy, as matter of law “are to be resolved against the insurer and the construction more favorable to the insured is to be adopted”). Furthermore, when interpreting the insurance policy, “exclusions from coverage are to be strictly construed so as not to diminish the protection purchased by the insured . . .” Middlesex Ins. Co., 9 Mass.App.Ct. at 856; see also Bates v. John Hancock Mut. Life Ins. Co., 6 Mass.App.Ct. 823 (1978).
Western World drafted the Policy, and included the terms “subcontractor” and “independent contractor,” but failed to define those terms, which are material to interpretation of the Policy and must be interpreted in a reasonable manner that is consistent with the purpose of the entire Policy. Sullivan at 442. A contractor is defined as “one of the parties to a contract.” Nautilus Ins. Co. v. ACM Contractors, Inc., 549 F.Sup.2d 857, 866 (S.D.Tex. 2008). A subcontractor is “(o]ne who has entered into a contract, express or implied, for the performance of an act with the person who has already contracted for its performance.” Southworth Milton, Inc. v. Pytko Construction Corp., No. 06-0094, 2006 Mass.Super. LEXIS 586, at * 7 (Nov. 17, 2006) [21 Mass. L. Rptr. 659] (quoting Black’s Law Dictionary). A worker is an independent contractor when “the employer has reserved only the right to control the ends to be achieved . . .” Building Material et al. v. National Labor Relations Board, 669 F.2d 759, 764 (U.S.App.D.C. 1981). All subcontractors are independent contractors, but independent contractors may or may not be subcontractors. Garry Allen Nash v. Damson Oil Corp., 480 So.2d 1095, 1100 (Miss. 1985) (referencing Dunn, Mississippi Workmen’s Compensation, §10 (3d ed. 1982)).
Notwithstanding J.D. Venture’s statement in its July 10, 2003 application to Malcolm & Parsons that the “contractor” was to be JPC,[3] there is no genuine dispute that J.D. Venture was applying for coverage because J.D. Venture, as owner of the Sanctuary, planned to hire others, such as Kerry Electric, to perform specially work. Rather, the dispute is whether those which J.D. Venture hired were subcontractors.
J.D. Venture’s July 23, 2003 “Bldrs Risk" application reflects the insurance that J.D. Venture sought to purchase. That application, under the section titled “Contractors,” asks the applicant to state the following information: “Remarks/Describe the type of work subcontracted; $ paid to subcontractors; % of work subcontracted; #full-time staff; #part-time staff:” J.D. Venture left each of those items blank.
*533 The foregoing persuades the Court that J.D. Ventures sought and received insurance from Western World for J.D. Venture’s work on the renovation; that J.D. Venture, having entered no contract for its performance of the work, was not a “contractor”; and that both insured and insurer understood that there would be no “subcontractors” on the project. Rather, the summary judgment record demonstrates that both parties understood that J.D. Venture, as owner, would engage independent contractors to do that work which J.D. Venture could not do. The Court concludes that, in light of the Exclusion, there is no genuine issue of material fact that coverage for injury to employees of independent contractors, such as Kerry Electric, is excluded from the Policy.
ORDER
For the foregoing reasons, plaintiffs’ motion for summary judgment is DENIED, and defendant Western World’s motion for summary judgment is ALLOWED.

 The spelling of Mr. Cronin’s name as it appears on the Court’s docket.

 That entry might be dispositive had JPC actually retained Kerry Electric as a subcontractor. Cronin’s deposition testimony confirms, however, that “the agreement to provide electrical services was between Kerry Electric and J.D. Venture itself . . .” April 6, 2009 deposition of Cronin, at 107, 11.14-17.