Leibensperger, Edward P., J.
The plaintiff, Charlene Colt, brings this declaratory judgment action to resolve a dispute regarding the benefits to which Harry Bruner (the “insured”) is entitled under a disability insurance policy issued by Massachusetts Mutual Life Insurance Company (the “insurer”). Both parties move for summary judgment regarding their interpretations of the disability policy and its accompanying riders. For the reasons that follow, Colt’s motion is ALLOWED and Massachusetts Mutual’s motion is DENIED.
BACKGROUND
The following is a summary of the undisputed facts taken from the record. Colt is an attorney in good standing of the bar in Massachusetts. The Probate and Family Court for Suffolk County appointed Colt as conservator of Bruner’s estate on March 30, 2009. Her appointment continues in full force. Massachusetts Mutual is a Massachusetts insurance corporation that is the successor in interest to Connecticut Mutual Life Insurance Company, which it acquired by merger in 1996.
Bruner was bom on October 6, 1947, and currently resides in Boston, Massachusetts. In 1982, when he was working as a licensed pharmacist, Bruner purchased a “disability income” policy from Connecticut Mutual. In 1984, Bruner purchased additional disability coverage from Connecticut Mutual. Massachusetts Mutual succeeded to all the rights, duties and obligations of its predecessor, Connecticut Mutual. The basic policy (“Base Policy”) purchased by Bruner from Connecticut Mutual provided $4,650 as a monthly benefit upon Bruner becoming totally disabled. The Base Policy states that Bruner will be paid this monthly benefit only until March 12, 2013, the Base Policy’s anniversary date following Bmner’s sixty-fifth birthday.
In addition to the Base Policy, Bruner purchased two riders in 1984. The first rider provides disability benefit benefits beyond March 12, 2013, until his death (“Lifetime Rider”). The second rider increases the monthly benefit provided to Bruner above that specified in the Base Policy based on a formula tied to increases in the consumer price index (“Cost of Living Rider”).[2]
In 1985, Bruner became totally disabled as a result of the onset of multiple osteochondroma, a debilitating bone disease. He has since remained totally disabled and unable to work because of this condition and other bone and psychological conditions that he has developed. It is exceedingly unlikely that he will ever be able to return to work in any capacity.
A. The Base Policy
The GENERAL RULES section of the Base Policy states that the “Entire Contract" consists of the “The Policy. The Application. Any attached riders, endorsements and other papers.” The DISABILITY BENEFITS section states that, for total disability, the insurer will pay a monthly benefit “equal [to] your basic monthly benefit shown on the Coverage Page . . .”[3] The DEFINITIONS section defines the “Maximum Benefit Period” as “(t]he maximum length of time we’ll pay benefits, whether for total disability, residual disability, or a combination ofboth.” The Policy says that “(a)s long as you pay your premium on time, we’ll continue coverage until the Anniversary on or following your 65th birthday.” In addition, the Coverage Page explic *548 itly references the term “Maximum Benefit Period” for the Base Policy as “TO 65.”
B.The Cost of Living Rider
The Cost of Living Rider that Bruner purchased in addition to the Base Policy provides “monthly benefit increases while you’re totally or residually disabled.” The rider states:
The rider is made a part of your policy in consideration of your application and premium payments. A copy of the application is attached to and made a part of your policy.
The rider also states that “all definitions in Part I of your policy apply to this rider.”
Under the section entitled “When We’ll Pay Monthly Benefit Increases,” the Cost of Living Rider provides “(w]e’ll pay monthly benefit increases while you’re receiving total or residual disability benefits.” That statement is then further defined by the section entitled “How Long We’ll Pay Benefit Increases.” There, the rider states that benefit increases will be paid until the earliest of “the date your total or residual disability ends”; “the date the maximum benefit period under this rider ends”; or “the anniversary on or after your 65th birthday." Like the monthly benefit under the Base Policy, the Cost of Living Rider is referenced on the Coverage Page under the Maximum Benefit Period as “TO 65.”
C. The Lifetime Rider
Bruner also purchased additional coverage through a Lifetime Rider. It provides “monthly total disability benefits to be paid beyond the Anniversary on or after your 65th birthday. Benefits will be paid for life.” Again, the rider notes that all definitions in the policy apply to this rider.
Under the section entitled “When We’ll Pay Monthly Disability Benefits,” the Lifetime Rider states that:
If you’re eligible, your monthly benefits under this rider will start after the Anniversary on or after your 65th birthday. We will make the first payment 1 month after that Anniversary. We’ll continue to make monthly payments as long as you remain totally disabled.
In the “Monthly Total Disability Benefit” section of the Lifetime Rider, it is explained that “(t]he largest amount of monthly benefit you will receive under this rider is shown on the current Coverage Page of your policy.”
D. The Coverage Page
The Coverage Page contains the following information pertinent to the parties’ dispute:
EFFECTIVE DATE COVERAGE MONTHLY BENEFIT MAXIMUM* BENEFIT PERIOD ANNUAL PREMIUM
MAR 12 1982 BASIC MONTHLY BENEFIT WITH ADJUSTABLE BENEFIT $2,100 TO 65 $743.20
MAR 12 1982 PARTIAL DISABILITY $1,050 $94.50
MAR 12 1982 LIFETIME ACCIDENT/ SICKNESS $2,100 $120.96
MAR 12 1982 COST OF LIVING RIDER MAXIMUM 7.50% TO 65 $200.34
MAR 12 1984 ADDITIONAL MONTHLY BENEFIT $2,550 TO 65 $934.07
MAR 12 1984 PARTIAL DISABILITY $1,275 $121.64
MAR 12 1984 LIFETIME ACCIDENT/ SICKNESS $2,550 $155.06
MAR 12 1984 COST OF LIVING RIDER MAXIMUM 7.50% TO 65 $257.04
YOUR MAXIMUM MONTHLY BENEFIT IS $4,650 TOTAL ANNUAL PREMIUM $2,627.81
*YOUR BENEFIT PERIOD FOR DISABILITY IS YOUR SPECIFIED BENEFIT PERIOD, BUT NOT BEYOND MAR 12 2013. HOWEVER, THE BENEFIT PERIOD FOR YOUR MONTHLY BENEFIT WILL BE AT LEAST 24 MONTHS. YOUR BENEFIT PERIOD MAY BE EXTENDED BEYOND MAR 12 2013 IF YOU QUALIFY FOR BENEFITS UNDER THE LIFETIME ACCIDENT/SICKNESS RIDER. SEE YOUR RIDER FOR DETAILS.
*549 The Base Policy, Lifetime Rider, and Cost of Living Rider all remain in effect to the present date in the same form. Bruner is currently receiving $16,120 in monthly disability benefits, including the benefit under the Base Policy of $4,650 and benefit increases under the Cost of Living Rider amounting to $11,470.
A dispute has arisen between Colt and Massachusetts Mutual regarding the interpretation of the Base Policy, Lifetime Rider, and Cost of Living Rider. Colt interprets the Lifetime Rider as extending all of the insured’s monthly benefits, including the monthly benefit increases, beyond March 12, 2013 for the rest of insured’s life. Massachusetts Mutual reads the Lifetime Rider as only extending the monthly benefit under the Base Policy, and not the monthly benefit increases available under the Cost of Living Rider.
DISCUSSION
Summary judgment may be granted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c). The moving party may prevail on its motion by demonstrating by reference to materials properly in the summary judgment record, unmet by countervailing materials, that the party bearing the burden of proof at trial has no reasonable expectation of proving an essential element of its case. Carey v. New England Organ Bank, 446 Mass. 270, 278 (2006), citing Kowouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). To survive summary judgment, the non-moving party must set forth specific facts with affidavits, deposition testimony, answers to interrogatories, or admissions on file showing that a genuine issue of fact exists. Mass.R.Civ.P. 56(e); Ng Bros. Constr., Inc. v. Cranney, 436 Mass. 638, 644 (2002).
An insurance policy is construed in the same manner as any other contract and its interpretation is a question of law for the court. Norfolk & Dedham Mut. Fire Ins. Co. v. Quane, 442 Mass. 704, 707 (2004). The court construes the terms of an insurance policy according to their usual and ordinary meaning. Money Store/Mass., Inc. v. Hingham Mut. Fire Ins. Co., 430 Mass. 298, 300 (1999). “Every word in an insurance contract ‘must be presumed to have been employed with a purpose and must be given meaning and effect whenever practicable.’ ” Allmerica Fin. Corp. v. Certain Underwriters at Lloyd’s, London, 449 Mass. 621, 628 (2007) (citations omitted). “The objective is to construe the contract as a whole, in a reasonable and practical way, consistent with its language, background, and purpose.” Massachusetts Property Ins. Underwriting Ass’n v. Wynn, 60 Mass.App.Ct. 824, 827 (2004). If the terms of an insurance policy are clear, its interpretation is appropriately decided at the summary judgment stage. Sullivan v. Southland Life Ins. Co., 67 Mass.App.Ct. 439, 442 (2006).
“A term [in an insurance policy] is ambiguous only if it is susceptible of more than one meaning and reasonably intelligent persons would differ as to which meaning is the proper one.” Sullivan, 67 Mass.App.Ct. at 443, quoting County of Barnstable v. American Fin. Corp., 51 Mass.App.Ct. 213, 215 (2001). “[A]n ambiguity is not created simply because a controversy exists between the parties, each favoring an interpretation contrary to the other.” Lumbermens Mut. Cas. Co. v. Offices Unlimited, Inc., 419 Mass. 462, 466 (1995). “Any ambiguities in the language of an insurance contract are interpreted against the insurer who used them and in favor of the insured.” Allmerica Fin.Corp., 449 Mass. at 628; Sullivan, 67Mass.App.Ct. at 444.
Here, the parties agree that the facts material to interpretation of the policy are undisputed and that no extrinsic evidence exists with which to inform the meaning of the policy and its riders. Thus, the Court may resolve this matter at the summary judgment stage.
A. Insurer’s Arguments
Massachusetts Mutual’s position is that the Cost of Living Rider explicitly terminates the payment of “benefit increases” after “the anniversary on or after your 65th birthday." The insurer notes that the “Monthly Total Disability Benefit” extended under the Lifetime Rider makes no direct reference to monthly benefit increases. Instead, the “Monthly Total Disability Benefit” is defined as “[t]he largest amount of monthly benefit you will receive under this rider is [that] shown on the current Coverage Page of your policy.” Massachusetts Mutual then points to the “Maximum Monthly Benefit” of $4,650 on the Coverage Page. Massachusetts Mutual maintains that the only reasonable way to interpret the disability insurance policy is that the Cost of Living Rider ends at age 65.
B. Insured’s Arguments
Colt argues that the Lifetime Rider extends payment of both the monthly benefit and monthly benefit increases under the Cost of Living Rider. That is because the Lifetime Rider extends “total disability benefits” for life. When the Lifetime Rider attempts to define “total disability benefits,” it does so by stating “[t]he largest amount of monthly benefit you will receive under this rider is shown on the current Coverage Page of your policy.” When the Coverage Page is reviewed to obtain a value for “total disability benefits” there is no number that corresponds exactly. The Coverage Page reference to “Your Maximum Monthly Benefit is $4,650" is a description of the monthly benefit under the Base Policy, only.
C.Analysis
The Court begins its analysis with the principle that the rules of contract interpretation and the definitions within the Base Policy dictate that the disability policy be read as a whole to include the Base Policy, the Cost of Living Rider, the Lifetime Rider, and “other papers” (as referenced in the Base Policy) including the Coverage Page and the application. A court is obligated to *550 construe all the provisions contained in the policy in a reasonable and ordinary manner and in such a way that harmonizes the meaning of all terms within the policy.
The threshold question that must be addressed is whether the express language in the Cost of Living Rider that says payments of benefit increases will be made only until “the anniversary on or after your 65th birthday” ends the inquiry. Standing alone, that language vindicates the insurer’s termination of cost of living benefits on March 13, 2013. The answer is that when the Base Policy, the Cost of Living Rider and Lifetime Rider are examined and interpreted as one, integrated disability insurance policy, the extension of all of Bruner’s benefits to the end ofhis life is apparent.
Both the Base Policy and the Cost of Living Rider are drafted as stand alone documents. That is to say that each document provides a benefit that unquestionably ends at age 65. Each document makes no direct reference to the effect on payment of benefits by the existence of a Lifetime Rider. On the Coverage Page, both the Base Policy’s “monthly benefit” and the Cost of Living Rider’s benefit increases are noted to extend only “TO 65" as the maximum benefit period. Nevertheless, the insurer concedes that the Lifetime Rider acts to extend the basic monthly benefit for life but denies the rider extends the cost of living benefits. The Court can find no basis in the language of the policy as a whole to justify the insurer’s distinction between the types of benefits.
The Lifetime Rider must be given effect. It provides for extension of payment of benefits despite clear language in the policy limiting payment of benefits to age 65. The Lifetime Rider overrides that limitation. Thus, the language of the Lifetime Rider must be examined to determine the scope of the extension provided.
The Lifetime Rider starts with the statement that it “provides monthly total disability benefits to be paid beyond the Anniversary on or after your 65th birthday. Benefits will be paid for life.” It is significant that the extension is of “total disability benefits” not just the “basic monthly benefit” from the Base Policy and as shown on the Coverage Page. The insurer, as drafter, could have made direct reference to only the benefit under the Base Policy but it did not do so. Instead, it used the generic “total disability benefits” (note the use of the plural) which gave the insured a reasonable basis to believe that all benefits, including the cost of living increases, were extended.
The Coverage Page adds more support for the conclusion that all benefits are extended by the Lifetime Rider. As noted earlier, the Coverage Page has a column entitled “Maximum Benefit Period.” In the column it is stated that both the Base Policy benefit and the Cost of Living Rider benefit go “TO 65.” The column, however, has an asterisk at the top, signifying that the asterisk and its accompanying note apply to all the benefits referenced in the column. The accompanying note states that “YOUR BENEFIT PERIOD MAY BE EXTENDED BEYOND MAR 12 2013 IF YOU QUALIFY FOR BENEFITS UNDER THE LIFETIME ACCIDENT/SICKNESS RIDER. SEE YOUR RIDER FOR DETAILS.” Again, the insurer could have put the asterisk next to the Base Policy benefit, only. Instead, the placement of the asterisk indicates that the Lifetime Rider affects the Maximum Benefit Period for all benefits provided by the policy, including the increased monthly benefit provided by the Cost of Living Rider.
The insurer points to the Coverage Page where it says “YOUR MAXIMUM MONTHLY BENEFIT IS $4,650" and attempts to equate that language to the language in the Lifetime Rider where it states ”[t]he largest amount of monthly benefit you will receive under this rider is shown on the current Coverage Page of your policy." The problem with this argument is twofold. First, the Lifetime Rider does not give a specific place or line on the Coverage Page to which it is referring when it says “largest amount of monthly benefit.” In other words, the language in the Coverage Page upon which the insurer relies does not match exactly the language in the Lifetime Rider. Instead, the Coverage Page must be viewed as a whole and doing so indicates the Cost of Living Rider is also a benefit provided. While a number is not shown, it is evident from the policy that the number is a calculation based upon the consumer price index each year. Accordingly, the number is a “monthly benefit” that will be, and has been, paid by the insurer since 1985. To come to “the largest amount of monthly benefit” the cost of living benefits must be included.
Second, the Coverage Page reference to “YOUR MAXIMUM MONTHLY BENEFIT IS $4,650" is inconsistent and ambiguous. That statement is in the same line that ends with ’’TOTAL ANNUAL PREMIUM $2,627.81." When the numbers are added to come to the total annual premium, the total includes premiums paid for the Cost of Living Rider. Consequently, it is inconsistent for the Coverage Page to say the “maximum monthly benefit” is only the Base Policy benefit while at the same time a premium for the cost of living benefit is being charged. If a premium is being charged it must be for a potential benefit under the policy. That inconsistency reinforces the conclusion that the “largest amount of monthly benefit” referred to in the Lifetime Rider includes both the Base Policy benefit and the Cost of Living Rider’s increased monthly benefit. The statement “YOUR MAXIMUM MONTHLY BENEFIT IS $4,650" is ambiguous, at least, if not simply incorrect. As such, it will be interpreted in favor of the insured.
ORDER
For the reasons stated above, Colt’s Motion for Summary Judgment is ALLOWED and Massachusetts Mutual’s Motion for Summary Judgment is DENIED. *551 The Court declares as a final judgment that Bruner is entitled to be paid both the Base Policy benefit and the cost of living benefit increases for the rest of his life, so long as he is disabled.

The Base Policy and riders provide benefits only if Bruner is and remains disabled

The remaining words of the sentence are “multiplied by the ratio of your loss of income to your predisability income.” The parties appear to agree that this ratio is 100% for Bruner.