NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-232

STEPHANIE J. LANDVATER

vs.

MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

After a dispute over disability insurance benefits, the plaintiff, Stephanie J. Landvater, filed suit in the Superior Court against the defendant, Massachusetts Mutual Life Insurance Company (MassMutual).  She alleged that MassMutual breached their contract, breached the covenant of good faith and fair dealing, violated G. L. c. 93A and G. L. c. 176D, and violated a Vermont insurance regulation.  A judge of the Superior Court entered judgment on the pleadings in favor of MassMutual, pursuant to Mass. R. Civ. P. 12 (c), 365 Mass. 754 (1974). Landvater appeals, and, discerning no error, we affirm.

Background.  Landvater was an orthopedic surgeon who practiced in Vermont.  On September 14, 1992, she purchased a

disability income insurance policy from MassMutual's predecessor.[1] As relevant here, under the policy, if Landvater became totally disabled and unable to perform her duties as an orthopedic surgeon, she would become eligible to receive monthly total disability benefits of $10,125 (Monthly Benefit) until the expiration of the policy.[2] The policy's expiration date was the policy anniversary "on or next after [Landvater's] 65th birthday." Because she turned sixty-five in December 2020, the expiration date was September 14, 2021. After this date, the policy was no longer in force.

In addition to purchasing this total disability policy, Landvater also purchased a separate lifetime total disability rider (Lifetime Rider), for which she paid MassMutual a separate annual premium.[3] The Lifetime Rider was made a part of the policy. Under the terms of the Lifetime Rider, if Landvater became totally disabled before the expiration date, she would be eligible to receive additional disability benefits after the policy expired. The Lifetime Rider states that if the

---

[1] The predecessor was Connecticut Mutual Life Insurance Company, which later merged with MassMutual. There is no dispute that MassMutual is responsible for providing coverage under the policy terms.

[2] The annual premium for this policy was $2,767.59.

[3] Landvater paid a separate annual premium of $569.32 for the Lifetime Rider.

requirements for eligibility have been met, the benefits will "start to accrue after the Expiration Date of the Policy."

In 2017, at the age of sixty-two, Landvater became totally disabled.  She applied for total disability benefits; MassMutual approved her claim and began paying the Monthly Benefit effective December 2017.  In September of 2021, shortly after Landvater turned sixty-five, MassMutual stopped paying Landvater the Monthly Benefit and began paying her lifetime total disability benefit under the Lifetime Rider in the amount of $3,037.50 per month.  Landvater challenged MassMutual's calculations, contending that under the terms of the Lifetime Rider, she was entitled to receive payments of $10,125.  When MassMutual refused to adjust her monthly payment, Landvater filed this suit.  A judge of the Superior Court granted MassMutual's motion for judgment on the pleadings and this appeal followed.

Discussion.  1.  Standard of review.  "We review de novo a judge's order allowing a motion for judgment on the pleadings under Mass. R. Civ. P. 12 (c)."  Champa v. Weston Pub. Sch., 473 Mass. 86, 90 (2015), quoting Merriam v. Demoulas Super Mkts., Inc., 464 Mass. 721, 726 (2013).  "A defendant's rule 12 (c) motion is actually a motion to dismiss . . . that argues that the complaint fails to state a claim upon which relief can be granted."  Ridgeley Mgmt. Corp. v. Planning Bd. of Gosnold, 82

Mass. App. Ct. 793, 797 (2012), quoting Jarosz v. Palmer, 436 Mass. 526, 529 (2002). When determining whether the plaintiff's claims survive a motion for judgment on the pleadings, just as in the case of a motion to dismiss under Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974), the court must "accept as true the factual allegations in the complaint and the attached exhibits, draw all reasonable inferences in the plaintiff's favor," and determine if the plaintiff has a plausible claim for relief. Buffalo-Water 1, LLC v. Fidelity Real Estate Co., 481 Mass. 13, 17 (2018).

2. Interpretation of insurance policies.[4] Landvater's claims of breach of contract and breach of the covenant of good faith and fair dealing hinge upon the interpretation of the language of the policy. "The interpretation of an insurance policy is a question of law." Dorchester Mut. Ins. Co. v. Miville, 491 Mass. 489, 492 (2023), quoting City Fuel Corp. v. National Fire Ins. Co. of Hartford, 446 Mass. 638, 640 (2006). "Like all contracts, an insurance policy is to be construed according to the fair and reasonable meaning of its words." Id. The provisions of the policy are to be construed "according to

_____

[4] We note that the parties agree that Vermont law controls. We cite to Massachusetts law, however, as the law regarding the interpretation of the insurance policy is identical in Massachusetts and Vermont.

4

their plain meaning if they are unambiguous."  Sullivan v. Southland Life Ins. Co., 67 Mass. App. Ct. 439, 442 (2006).  A term in an insurance policy "is ambiguous only if it is susceptible of more than one meaning and reasonably intelligent persons would differ as to which meaning is the proper one" (quotation omitted).  Id. at 443.  Controversy between the parties does not alone create an ambiguity, "[n]or does the mere existence of multiple dictionary definitions of a word, without more, suffice to create an ambiguity, for most words have multiple definitions" (quotation omitted).  Id.

Here, the parties agree that under the plain language of the policy, Landvater is totally disabled, and her total disability occurred before the expiration date of the policy. The exact amount of monthly payment owed to Landvater under the terms of the Lifetime Rider remains disputed.  Landvater claims that the language of the Lifetime Rider is ambiguous and that she is entitled to a lifetime monthly payment of $10,125.[5] MassMutual, on the other hand, contends that because Landvater's total disability occurred seven years after she turned fifty-five years old, under the plain and unambiguous language of the Lifetime Rider, her lifetime monthly payment is $3,037.50.

_____

[5] The policy's annual premium summary lists the amount of lifetime total disability benefit as $10,125 -- the same as the Monthly Benefit.

5

To determine whether the language is susceptible of two plausible and reasonable interpretations, we turn to the specific language of the policy. The Lifetime Rider provides that "if [Landvater] becomes Totally Disabled before the Policy Anniversary on or next after his/her 55th birthday, the Total Disability Benefit will be the Monthly Benefit for this Rider" (emphasis added). Landvater turned fifty-five years old on December 8, 2010, and the next policy anniversary was September 14, 2011. This means that if Landvater had become disabled before September 14, 2011, she would have been entitled to receive the full $10,125 monthly payment once her original policy ended and the Lifetime Rider took effect. However, as in the case here, if Landvater became totally disabled after the policy anniversary "on or next after his/her 55th birthday, the Total Disability Benefit will be the Monthly Benefit for this Rider reduced by ten percent for each year Disability begins, after such anniversary." This means that the Lifetime Rider monthly payment would be reduced by ten percent for each year after September 14, 2011, that Landvater did not become "totally disabled."

Landvater claims that the language of the Lifetime Rider is ambiguous and that a reasonable interpretation is that her monthly payment could be reduced by ten percent at most. Landvater focuses her analysis on the placement of the comma

inserted after the term "each year Disability begins" and argues that because her disability began on only one occasion, MassMutual could only reduce her benefits one time by ten percent. We disagree with Landvater's reading of the policy language. The language of the Lifetime Rider provides that, if the policy holder is disabled after turning fifty-five years old, the benefit will be reduced by ten percent for each anniversary year that elapsed before her disability began. Simply put, the calculation is based upon the time between the policy anniversary following the insured's fifty-fifth birthday and the start of disability. Here, from age sixty-two to age sixty-five, Landvater was paid the Monthly Benefit of $10,125 under the total disability policy. That benefit terminated on September 14, 2021. Without the Lifetime Rider, Landvater would not have been entitled to any further payments. However, because she purchased the separate benefit of the Lifetime Rider, Landvater was entitled to receive payments after the total disability policy expired. Therefore, in September of 2021, the policy anniversary after Landvater reached the age of sixty-five, she stopped receiving her Monthly Benefit and began receiving her lifetime monthly payments under the Lifetime Rider. Since Landvater's disability occurred during the seventh policy year following the policy anniversary after her fifty-fifth birthday, her full monthly payment under the Lifetime

7

Rider was reduced by seventy percent, which reflects a ten percent reduction for each year her disability began after the policy anniversary.

Reviewing Landvater's policy as a whole, we conclude that its terms are unambiguous.  There is but one reasonable interpretation of the language of the Lifetime Rider and it does not support Landvater's position.  While we agree that the language in the Lifetime Rider policy could be improved, "difficulty in comprehension does not equate with ambiguity." Massachusetts Prop. Ins. Underwriting Ass'n v. Wynn, 60 Mass. App. Ct. 824, 827 (2004).  In sum, MassMutual correctly calculated Landvater's monthly lifetime payment under the Lifetime Rider and, as such, judgment on the pleadings was warranted on Landvater's claims for breach of contract and breach of the covenant of good faith and fair dealing.[6]

3.  Violation of Vermont Administrative Code.  Landvater also argues that MassMutual is in violation of Vermont law because it fails to meet Vermont's minimum standards of

---

[6] Because MassMutual's calculation of benefits was based on a good faith -- and correct -- interpretation of the policy language, Landvater's claim under G. L. c. 93A, based on standards under G. L. c. 176D, must fail.  See McGilloway v. Safety Ins. Co., 488 Mass. 610, 618 (2021) ("Recovery under G. L. c. 93A for a violation of G. L. c. 176D, § 3 [9], is unlikely when [a]n insurance company in good faith denies a claim of coverage on the basis of a plausible interpretation of its insurance policy" [quotation omitted]).

disability coverage.  Under a Vermont insurance regulation, once an insured reaches the age of sixty-two, it is unlawful for an insurance company to reduce disability benefits by more than fifty percent based solely upon the age of the insured.  See 21-020-001 Vt. Code R. § 7(F)(1) (1989) (requiring that "periodic payments" of disability income protection policies "which are payable at ages after 62 and reduced solely on the basis of age are at least 50% of amounts payable immediately prior to 62").

Since Landvater's monthly payment under the Lifetime Rider was the same amount as the Monthly Benefit, reduced by seventy percent, Landvater concludes that MassMutual is in violation of Vermont law.  MassMutual counters that the pertinent regulation defines "Disability Income Protection Coverage" as a policy that provides "periodic payments, weekly or monthly, for a specified period during the continuance of disability."  21-020-001 Vt. Code R. § 7(F).  MassMutual contends that the regulation is inapplicable because Landvater's Lifetime Rider provided her monthly benefits for her life and is not a policy for a specified period of time.  We note that neither party cited, and we are unaware of, any case that has analyzed the applicability of this regulation.  Nevertheless, assuming without deciding that this regulation is applicable to the Lifetime Rider at issue in this case, MassMutual's calculations of benefits did not run afoul of the regulation.  MassMutual did not reduce

Landvater's Monthly Benefit. Her total disability policy expired on September 14, 2021. On that same day, because she purchased the Lifetime Rider, Landvater's new coverage established a new benefit for her lifetime. The Monthly Benefit was never reduced. The Lifetime Rider is a separate source of coverage with a separate and distinct coverage period than that of the total disability policy, which was no longer in effect. The fact that the Lifetime Rider calculates the amount paid using the same Monthly Benefit as used in the total disability policy (adjusted to reflect the year that disability occurred) does not change the analysis. Therefore, there was no violation of Vermont law.

<u>Judgment affirmed</u>.

By the Court (Massing, Walsh & Brennan, JJ.[7]),

Clerk

Entered: January 23, 2025.

---

[7] The panelists are listed in order of seniority.